SAMUEL POPE *et al.* Administrators, etc.

*v.*

ELISHA DODSON.

1. A PROMISE, simply, to make a gift, can not be enforced.

2. PAYMENT—*what constitutes.* The owner of a tract of land conveyed the same to another, but for the convenience of the grantor, though the grantee executed his note for the purchase money. Subsequently the grantor, still treating the land as his own, sold to a third person for a larger amount, to whom the first grantee executed a conveyance and received

a note for the purchase money, which he assigned to his grantor and which the latter collected to his own use: *Held*, that, even regarding the first transaction as an actual sale, the second sale, connected with the fact that the original grantor received the proceeds thereof, in the absence of any special agreement, and it not appearing there were any other transactions between the parties, would operate as a payment of the note executed by the first grantee.

3. WITNESS—*credibility of.* A witness can not be discredited simply on the ground of an erroneous statement. It is only where the statements of a witness are wilfully and corruptly false in regard to material facts, that the jury are authorized to discredit his entire testimony. So it is erroneous to instruct the jury, that if a witness "has sworn falsely in any material statement," they may disregard the whole of his evidence except so far as corroborated.

APPEAL from the Circuit Court of Jersey county; the Hon. CHARLES D. HODGES, Judge, presiding.

This was a proceeding originally commenced in the probate court of Jersey county. In February, 1870, Ezekiel Dodson died intestate, and Samuel Pope and Catharine Dodson were appointed by the county court to administer upon his estate. Elisha Dodson, a son of the deceased, presented to the probate court, for allowance against the estate of his father, a promissory note, purporting to have been executed by the deceased in favor of the claimant. The court disallowed the claim, but upon appeal to the circuit court, judgment was rendered in favor of the claimant against the estate, to reverse which the administrators bring the record to this court.

Messrs. ROBINSON, KNAPP & SHUTT, for the appellants.

Messrs. WARREN, POGUE & AMES, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The defense sought to be interposed to the note in controversy, is two-fold: 1st, that the note was never executed by the intestate, Ezekiel Dodson; and 2nd, if genuine, it was given without any real consideration passing between the parties, and for a fraudulent purpose.

The evidence leaves no serious doubt on the mind, that the note was executed by the intestate. In addition to the testimony of one witness, who states he saw it executed, there is evidence that can not be disregarded, of repeated allusions to it by the intestate in his lifetime. We may assume that fact in the case is sufficiently established.

The only difficulty arising in the case, is to ascertain correctly for what consideration, if any, and for what purpose the note was given. There is much apparently contradictory testimony in the record, but about the main facts there does not seem to be much dispute.

In 1859, the appellee conveyed to the intestate, Ezekiel Dodson, the farm that had been purchased from Barrow, and was afterwards sold to Streetmaker, and the intestate executed and delivered to the appellee the note now in controversy.

It is insisted on the part of the appellee, that he made a *bona fide* sale of the farm to his father for the sum of $2,000, for which the note was given. On the other hand, it is insisted by the administrators that the sale was not in good faith; that the appellee conveyed the property to his father for the purpose of placing it beyond the reach of his creditors, and with the view of giving the transaction a colorable appearance of fairness, the note was executed without any intention that it should ever be paid. The intestate lived eleven years after the date of the conveyance, during which period the appellee held the note. It does not appear the appellee ever made any attempt to collect the money during the lifetime of his father, although his father was amply responsible, and during a part of the time, at least, he was himself very much pressed for money.

It appears that, for some purpose, whether it was for an honest or a fraudulent one, the farm was conveyed to the intestate, and the note executed and delivered. The facts in the case seem to us to be inconsistent with the theory of the appellee that it was an actual sale. It appears that after the conveyance was made, the appellee still treated the farm as his

own, and in January, 1861, he sold it to Streetmaker for the sum of $3,200, without disclosing to him that his father had any interest in it until after the trade was completed, when he told Streetmaker that his father would make the deed. Accordingly, the intestate did execute the deed, and the notes given for the purchase money were immediately assigned and delivered to the appellee, and were by him collected to his own use. It does not appear the intestate ever claimed any interest in the Streetmaker notes, or the proceeds thereof.

If we regard the conveyance of the farm to the intestate, as having been made for the convenience of the appellee, and not as an actual sale, we think much of the testimony that seems to be flatly contradictory, may, upon that theory, be reconciled consistently with the truth of the case, and without imputing any bad motives to any of the witnesses. It is in evidence that the intestate, in his lifetime, frequently alluded to this note, and said, when it was convenient, or when he could make the "ends meet," he would pay it. The reason invariably assigned for his intention to pay the note, was not that he really owed his son that amount of money, but that his son had lived with him and worked for him longer than any of his other children, after he became of age. This fact tends as much as any other fact in the whole record to elucidate the true meaning of the transaction between the parties.

We have no doubt, from the evidence, that Ezekiel Dodson fully intended to make his son a gift of the $2,000 in consideration of his services, rendered after he became of age, but he died without carrying into effect his benevolent intention in that regard. It is hardly necessary to say that a promise, simply, to make a gift, can not be enforced, either in the lifetime of the promissor, or against his estate after his death. This view of the case is consistent with the acts of the parties throughout the entire transaction, and gives full credence to the testimony of the witnesses.

It is equally apparent, that the conveyance of the farm to the intestate was for the convenience, and in some way to

enure to the advantage of the appellee himself, and whether it was for an honest or a fraudulent purpose, it is not now necessary to determine. There are no creditors whose rights could be affected, and it is immaterial, so far as this controversy is concerned, whether the conveyance was made in good or bad faith. The acts of the parties have an unmistakable meaning, and they appear to us to be totally inconsistent with the idea that the note was ever to be paid. The appellee subsequently sold the farm as his own, to Streetmaker, and received the entire purchase money to his own use. It was his own, and he had a right to sell it and receive the proceeds. Ezekiel Dodson never claimed, nor pretended to claim, any portion of the purchase money. These facts exclude the hypothesis of a *bona fide* sale, and will bear no other construction than that the transaction was in some way a matter of convenience to the appellee. The promises of Ezekiel Dodson to pay the note, when considered in the light of the evidence, do not materially aid the view of the appellee. Those promises were not founded upon the consideration that the money was due for the land, but upon his intention to make a gift to a favorite son who had rendered him valuable services after his majority, in assisting him to pay for his own farm. It seems to us no other fair construction can be given to these declarations, consistently with the acts of the parties. But if the transaction could be regarded in the light of an actual sale, we think some of the instructions given for the appellee were erroneous. It can not be doubted that the appellee received the entire proceeds of the farm sold to Streetmaker, which amounted to more than was due at the date of the sale on the $2,000 note.

One question involved in the case, was, whether that money did not extinguish the debt evidenced by the note. It is wholly immaterial whether the administrators set it up by way of set-off, or as payment. In the absence of any express agreement to the contrary, no reason is perceived why it did not extinguish the debt. No other indebtedness is shown to have

existed between the parties to which it could possibly have applied. It is not pretended the intestate owed the appellee any other sum of money.

The court, in the second instruction given in behalf of the appellee, told the jury, in substance, that the fact that the appellee received the proceeds of the sale of the land to Street-maker, would not prevent him from recovering, unless said proceeds were received in payment of the note, "and intended by said Elisha Dodson and Ezekiel Dodson as such." This instruction does not state the law correctly as applicable to the facts of this case, and was calculated to mislead the jury. The general rule is, that money received from the debtor by the creditor, or to his use, will apply upon any indebtedness due at the time. It is the duty of the creditor to make the credit upon the first indebtedness due, in the absence of any special agreement to the contrary. No other indebtedness was shown to have existed in this instance, and it was the duty of the appellee to have applied the proceeds of this sale, if they belonged to the intestate, to the payment of the note, and the law will presume he did. This instruction assumes, by its terms, that it requires a special agreement between the parties to make the proceeds of the sale apply as a credit or payment on the note. Such is not the law. In the absence of any special agreement to the contrary, the proceeds of the sale would necessarily constitute a credit on the note.

The tenth instruction, in the series given for the appellee, is palpably erroneous. It told the jury, that if the witness Lovely "has sworn falsely in any material statement," the jury might disregard her entire statement, except so far as it was corroborated. A witness can not be discredited simply on the ground of an erroneous statement; it is only where the statements of a witness are wilfully and corruptly false in regard to material facts, that the jury are authorized to discredit the entire testimony. The most candid witness may innocently make an incorrect statement, and it would be

monstrous to hold that his entire testimony, for that reason, should be disregarded.

Since the statute has authorized parties in interest to become witnesses in their own behalf, there must necessarily be conflicting evidence, and it by no means follows that one party or the other has sworn falsely. It may be an honest difference, and the application of the principle sought to be announced in the instruction, is of very doubtful propriety.

In the view we have taken of this case, many of the instructions given and refused have no application to the true issues involved, and we do not deem it necessary to inquire whether they state correct legal principles.

Because of the errors indicated, the judgment will be reversed and the cause remanded.

*Judgment reversed.*