# ROBERT J. ROY

*v.*

## ALFRED GOINGS.

*Filed at Mt. Vernon January 22, 1885.*

1. MALICIOUS PROSECUTION—*want of probable cause—whether malice to be inferred.* In an action for a malicious prosecution, when all the facts and circumstances proven show a want of probable cause for the arrest and imprisonment of the plaintiff on a charge of crime, the jury may take this fact into consideration, and from it infer malice, not as a matter of law, but as a conclusion of fact.

2. SAME—*advice of counsel—as a defence.* A party, in order to shield himself from a prosecution for an alleged malicious arrest, etc., by the advice of counsel, must make a full statement of all the material facts to the attorney advising him. The person seeking such advice will not be protected if he makes a garbled statement of the facts and circumstances bearing upon the question of the guilt or innocence of the person proposed to be arrested.

3. In this case, a mortgagor of crops grown by him, before the maturity of the debt gathered a load of beans from the land on which they were grown, and took them to his residence, about two miles distant, to thresh them. The mortgagee, on learning this, posted notices for a foreclosure of the mortgage, and forbade the mortgagor from removing any more of the crops, and threatened to have him arrested if he did. The latter, claiming he had the right to gather the beans, and denying the mortgagee's right to foreclose, gathered another load of beans, in open day, under claim of right, when the mortgagee had him arrested and imprisoned on a charge of larceny. In an action for malicious prosecution, by the mortgagor, against the mortgagee, the latter sought to justify under the advice of the State's attorney: *Held*, that he should have disclosed to the attorney, whose advice he sought, that the plaintiff took the property openly, in daylight, as any one would his own property, and that plaintiff had insisted that the mortgagee had no right to foreclose, and that he had claimed the right to gather and preserve the beans, in order to protect himself, as he had been advised he might do.

4. In a suit of this character, the proof showed the prosecution was instituted on the advice of the State's attorney, and also that such attorney was habitually intemperate. The jury were instructed that to entitle defendant to protect himself on the advice of an attorney, he must have communicated the facts within his knowledge, etc., to a respectable attorney in good standing, and have acted in good faith on his advice: *Held*, there was no error in the instruction in requiring the communication to have been made to an attorney in good standing, this court not being prepared to hold an attorney is in good standing merely because he holds a commission as State's attorney.

5. Same—*of the good faith required—independently of legal advice.* The law requires that one in instituting a criminal prosecution shall act in good faith, or under an honest belief of the guilt of the party arrested,—and this notwithstanding he has taken legal advice.

6. Instruction — *construed — whether directing an inference of law, rather than of fact.* On the trial of an action for a malicious prosecution, the court instructed the jury that if they believed, from the facts and circumstances as given in evidence, the defendant had not probable cause for the arrest and imprisonment of the plaintiff, then they might infer malice from such want of probable cause: *Held,* that the instruction was not obnoxious to the objection that it asserts a want of probable cause as in law authorizing an inference of malice. Such an instruction is not mandatory, but is permissive, allowing the jury to draw an inference of fact only, if there is any such inference fairly to be drawn.

7. Same—*construed—as to credit to be accorded to the testimony of a witness sought to be impeached.* The trial court instructed the jury in a case as follows: "While the law permits the impeachment of a witness by proving his general reputation for truth and veracity in the neighborhood where he resides to be bad, yet if you believe that the plaintiff, while on the stand, gave a truthful, candid and honest statement of the facts and circumstances surrounding the transaction in question, then the jury should not disregard his testimony, but you should give it such faith and credit as in your opinion it is entitled to:" *Held,* that the instruction did not assert that the jury might believe an impeached witness, but stated correctly that an impeachment is allowed, and further, that if the evidence failed to impeach to the satisfaction of the jury, the witness was not impeached, nor was he if the jury still believed his testimony.

8. Same—*by the court on its own motion.* A trial court has ample power to instruct a jury *sua sponte,* and, moreover, it is its duty to do so when the promotion of justice so demands.

9. Impeachment of witness—*weight to be given to testimony.* A jury should never give the slightest weight to testimony, however positive, which they believe to be untrue. If a witness has been successfully impeached, his testimony, unless corroborated, is unworthy of belief, and should have no weight; but it is for the jury to say, from the whole evidence, whether the witness has been impeached.

10. Verdict—*as to the mode of reaching the amount—jury required to reconsider, as to the mode of their finding.* A jury, on being polled upon the return of their verdict, were asked how they arrived at the amount of damages, and answered, it was by each juror fixing a sum and dividing the aggregate of such sums by twelve. The court thereupon gave the jury this instruction, on its own motion: "If your verdict be in favor of the plaintiff, you can not, in determining the amount of damages for the plaintiff, add together the respective amounts named by each juror, and divide the sum

by twelve, the number of the jurors, but must determine and agree upon the amount of damages collectively, and as one body,"—and sent the jury out again: *Held,* that there was no error in the action of the court, except in allowing the jurors to be questioned, so as to elicit answers to impeach their verdict.

11.    Upon the return of the jury a second time, they brought in a verdict for the same amount of damages as before, and on being polled, each juror said the verdict was his verdict: *Held,* that the presumption was, the jury obeyed the instruction, and that the answers of the jurors on being polled, repelled any presumption that the amount of the damages was arrived at by addition and division.

12.    Same—*impeaching a verdict by testimony of the jurors themselves.* A juror can not testify to any fact to impeach a verdict in the finding of which he has participated.    On polling a jury, it is error to permit counsel to ask the jurors to state in what manner they arrived at the amount of the damages reported by them.

Appeal from the Appellate Court for the Fourth District;— heard in that court on appeal from the Circuit Court of Pulaski county; the Hon. Oliver A. Harker, Judge, presiding.

Mr. Samuel P. Wheeler, for the appellant:

The fourth of plaintiff's instructions was erroneous, as allowing the jury to infer, as a matter of fact, malice, from a want of probable cause.    *Harpham* v. *Whitney,* 77 Ill. 32.

Plaintiff must show malice as well as want of probable cause.    2 Greenleaf on Evidence, sec. 453; 1 Hilliard on Torts, 514.

Want of probable cause is a fact to be considered in determining the question of malice, but malice ought not to be inferred from it unless the charge is willfully false.    *Bishop* v. *Bell,* 2 Bradw. 551; *Splane* v. *Byrne,* 9 id. 392; *Hirchi* v. *Mittleman,* 7 id. 112; *Comisky* v. *Brun,* id. 369.

In consulting counsel, the defendant, if he acted upon his advice, is protected, unless he culpably withheld material information or was grossly negligent.    2 Greenleaf on Evidence, sec. 459; *Stevens* v. *Fassett,* 14 Shep. 266; *Brown* v.

*Smith,* 83 Ill. 291; *Ross* v. *Innis,* 35 id. 487; *Calef* v. *Thomas,* 81 id. 478; *Anderson* v. *Friend,* 85 id. 135.

It was wrong to state in the instruction that defendant must consult "a respectable attorney in good standing," and it was error to require the defendant to act in good faith on the attorney's advice.

The seventh of plaintiff's instructions is erroneous in singling out the fact that plaintiff claimed the right to gather the beans, as being material on the question of larceny. *Hatch* v. *Marsh,* 71 Ill. 370; *Hirchi* v. *Mittleman,* 7 Bradw. 112.

The tenth instruction told the jury that if they believed the plaintiff told the truth, they should not disregard his testimony, notwithstanding his impeachment. This was erroneous. *Huddle* v. *Martin,* 54 Ill. 258.

Messrs. MULKEY & LEEK, for the appellee:

Plaintiff's fourth instruction is not open to the objection that it tells the jury they must infer malice from a want of probable cause. That the jury may so infer malice is supported by the authorities. *Chapman* v. *Cawrey,* 50 Ill. 512; *Callahan* v. *Caffarate,* 39 Mo. 136; *Roy* v. *Goings,* 6 Bradw. 140; *Forbes* v. *Hagman,* 73 Va. 168; *Clossen* v. *Staples,* 42 Vt. 222; *Strauss* v. *Young,* 36 Md. 246; *Cooper* v. *Utterback,* 37 id. 282; *Mowrey* v. *Whipple,* 8 R. I. 363; *Page* v. *Cushing,* 38 Me. 523; *Humphries* v. *Parker,* 52 id. 506; *Sappington* v. *Watson,* 50 Mo. 83; *Sharp* v. *Johnson,* 59 id. 557; 1 Am. Lead. Cases, (4th ed.) 220; *Ross* v. *Innis,* 35 Ill. 487; *Thompson* v. *Force,* 65 id. 370; *Israel* v. *Brooks,* 23 id. 575; *Krug* v. *Ward,* 77 id. 608; *Stevens* v. *Railway Co.* 26 Eng. L. & Eq. 410.

The facts of this case show express malice, beyond doubt. The Criminal Code was resorted to for the purpose of attaining dishonorable personal ends. *Ross* v. *Innis,* 35 Ill. 487; *Krug* v. *Ward,* 77 id. 605; *Schofield* v. *Feners,* 47 Pa. St. 196.

Acting upon the advice of counsel can never avail as a defence, unless there has been a full statement of all the facts to the advising counsel, of which the party is in possession.    *Ross* v. *Innis*, 35 Ill. 506; *Ash* v. *Marlow*, 20 Ohio, 119; *Stevens* v. *Fassett*, 27 Me. 266; *Bliss* v. *Wyman*, 7 Cal. 257; *Hendricks* v. *Cyssert*, 10 Humph. 291.

To the same effect are the cases of *Ames* v. *Snyder*, 69 Ill. 376; *Palmer* v. *Richardson*, 70 id. 544; *Anderson* v. *Friend*, 71 id. 475; *Davie* v. *Wisher*, 72 id. 262; *Murphy* v. *Lawson*, 77 id. 172; *Skidmore* v. *Bricker*, id. 164; *Calef* v. *Thomas*, 81 id. 478; *Anderson* v. *Friend*, 85 id. 137; *Loewenthal* v. *Streng*, 90 id. 74.

There was no error in the instruction requiring the legal advice acted on to come from a competent or reliable attorney, or one in good standing.    *Davie* v. *Wisher*, 72 Ill. 264; *Ames* v. *Snyder*, 69 id. 376; *Skidmore* v. *Bricker*, 77 id. 164; *Murphy* v. *Lawson*, id. 175; *Anderson* v. *Friend*, 85 id. 135; 71 id. 475.

It is well settled that where one previously forms the design to prosecute another, and then goes and advises with legal counsel as to whether it will be safe to commence such prosecution, the advice of counsel will constitute no defence. *Ross* v. *Innis*, 35 Ill. 510; *Ames* v. *Snyder*, 69 id. 381; *Chapman* v. *Dood*, 10 Minn. 350; *Ames* v. *Rathbun*, 55 Bart. 194; *Rover* v. *Webster*, 3 Clark, 502; *Kimball* v. *Bates*, 50 Me. 308; *Brown* v. *Randall*, 36 Conn. 56; *Schmidt* v. *Weidman*, 63 Pa. St. 173; *Glascock* v. *Bridges*, 15 La. Ann. 672.

A jury has the right to believe the uncorroborated testimony of a witness whose general reputation for truth has been impeached.    *Easton* v. *Chapman*, 21 Ill. 35; *Otmer* v. *People*, 76 id. 149; *Reynolds* v. *Greenbaum*, 80 id. 416; *Flousburg* v. *Basin*, 3 Bradw. 531; *Green* v. *Cochran*, 43 Iowa, 154.

Mr. Justice Walker delivered the opinion of the Court:

In January, 1878, Roy, the appellant, sold to Goings, the appellee, a farm in Pulaski county, in this State, and executed a bond for a title when payment should be made, as specified in the bond. For a part of the consideration, appellee gave his note to appellant, for $278.47, payable on the first day of March, 1879. To secure the payment of the note, appellee and his son executed a chattel mortgage on one mule, three horses, a two-horse wagon, and all the crops that should be grown on the farm in the year 1878. The mortgage contained a clause authorizing the mortgagors to retain the possession of the property until the maturity of the debt. Also, a provision authorizing the mortgagee to foreclose at any time he might feel the debt was insecure. Appellee entered into possession of the farm, and planted a crop of corn and tobacco, and also planted among the corn some pumpkins and beans. He, during the time, resided with his family on another farm, about two miles distant. There was no barn or building on the farm in which to secure the corn, tobacco and beans, when matured, but appellee had a house on the place where he lived, suitable for curing and preserving the tobacco. When matured he cut it, and removed it to the place where he resided, for the purpose of curing and preserving the same. Soon after the execution of the mortgage, appellee sold the mule named in the mortgage, to appellant, for $110, which sum was credited on the mortgage. After the tobacco was cured, appellee returned it to the farm on which it was raised, and stored it in a small cabin on the place. Appellant made several attempts to purchase the corn raised on the place, but was unable to agree with appellee upon the price. When the beans were ripe, appellee, assisted by members of his family, gathered a load, and hauled them to his house, for the purpose, as he claims, of threshing them. He, the next day, gathered another load, and hauled them home for the

like purpose.   This last load was gathered on the 7th day of October, 1878.   Appellant having learned that appellee had gathered a load on the previous day, on the morning of that day posted, on a tree in the vicinity of the farm, a notice that he had taken the crop raised on the farm, under the mortgage, and would offer it for sale.   Having learned that Goings had gathered a second load of the beans on that day, appellant saw him at his home, and informed him that he had advertised the property for sale, and notified Goings that he would put him in jail if he did not quit gathering the beans. Goings insisted appellant had no right to foreclose the mortgage, and he would continue to gather the beans, as he had the right to do.   On the 10th of October, whilst Goings and his children were in the field gathering beans, appellant had him arrested on a charge of larceny, and taken before a justice of the peace, who, after hearing the evidence, bound him over, in the sum of $200, for his appearance at the next term of the circuit court, but being unable to procure bail, he was committed to jail, where he remained for thirty-seven days, when, the grand jury failing to indict, he was discharged from imprisonment.   After his discharge, appellee commenced this action in case, for a malicious prosecution, and on a trial the jury found a verdict in his favor for $1272.   A motion for a new trial was overruled, and judgment entered on the verdict.   Defendant prosecuted an appeal to the Appellate Court, where the judgment was affirmed, and a further appeal brings the case to this court for review.

Several errors are assigned, and urged for a reversal of the judgment.   It is claimed the court erred in giving appellee's instructions.   The first of which complaint is made is the fourth.   It is this:

"If you believe, from the facts and circumstances as given in evidence, that the defendant had not probable cause for the arrest and imprisonment of the plaintiff, then and in such case you may infer malice from such want of probable cause."

The objection is, as claimed, that the instruction asserts that the want of probable cause is in law an inference that there was malice,—that it asserts this as a legal conclusion. Such is not the announcement, nor is it a fair interpretation of the language. The instruction does not inform the jury that they will, must or should so find, but that they might so find. The instruction is not mandatory, but permissive. The jury, no doubt, understood, that if, all the evidence considered, it did not appear that there was probable cause, then, if it was a fair inference, they might infer malice. In the case of *Chapman* v. *Cawrey*, 50 Ill. 512, an instruction in almost precisely the same language as this, was approved, and the judgment affirmed. The same doctrine is announced in *Krug* v. *Ward*, 77 Ill. 603, *Thompson* v. *Force*, 65 id. 370, *Israel* v. *Brooks*, 23 id. 575, and *Ross* v. *Innis*, 35 id. 487. These cases establish the rule, and are conclusive of the question. If it were necessary, many adjudged cases of other courts might be cited in its support, but these of our own court establish the rule.

Again, instructions are given in view of the evidence in the case, and not as mere legal abstractions. An instruction may be proper or not, in view of the evidence before the jury. If the trial court was satisfied that the evidence strongly tended to prove malice, then the instruction could, even if erroneous in that respect, have done no harm,—and when considered in this case, it tends, in the strongest manner, not only to prove the want of probable cause, but malice on the part of appellant.

Appellant criticises appellee's fifth instruction. It is as follows:

"Before the defendant can shield himself by the advice of counsel, it must appear from the evidence that he made in good faith a full, fair and honest statement of all the material circumstances bearing upon the supposed guilt of the plaintiff which were within the knowledge of the defendant, or which

the defendant could, by the exercise of ordinary care, have obtained, to a respectable attorney in good standing, and that the defendant in good faith acted upon the advice of said attorney in instituting and carrying on the prosecution against the plaintiff."

We are unable to perceive any serious objection to this instruction. It announces the general rule long and uniformly recognized in this class of defences. It informs the jury, that to shield himself, appellant was required to make a full, fair and honest statement of all the material circumstances of the supposed guilt of appellee which were within the knowledge of appellant, or which he could have learned by ordinary care, to a respectable attorney in good standing, and act on his advice. To protect himself he must make a full statement of all material facts. He will not be protected if he makes a garbled and untrue statement. Human liberty is too sacred to be recklessly invaded to gratify malice, or for the advancement of personal interest. The law will not tolerate such nefarious purposes or reckless disregard of the liberty of the citizen. There is no pretence, here, that appellant disclosed to the attorney that appellee took the property openly, in daylight, as any other person would have done with his own property. Nor did he inform the attorney that appellee had insisted that appellant had no right to foreclose the mortgage until the debt was due, and that he had claimed the right to gather and preserve the beans. Nor does appellant pretend that he had forgotten these circumstances, or urge any other excuse for withholding such important and controlling facts. Had he communicated them, we can not believe any attorney would have pronounced it larceny. On the facts appearing in evidence, the modification insisted upon would have been improper, because there was no evidence upon which to base it.

It is also urged, as we understand the argument, that it was error to require by the instruction that the communica-

tion should have been made to an attorney in good standing; that the instruction should have informed the jury that if the communication was made to the State's attorney, and he advised it was larceny, it was a full defence. We are not prepared to hold that the mere fact that an attorney holding a commission as State's attorney, must be held to be an attorney in good standing for skill, prudence and fairness. In this case, there was evidence strongly tending to prove the State's attorney who gave the advice was habitually intemperate, and perhaps to an extent that blunted and impaired his mental capacity. In the case of *Skidmore* v. *Bricker*, 77 Ill. 164, an instruction similar to this was held to be correct, although defendant consulted the State's attorney, and acted on his advice:

. It is urged that the instruction required too much in saying that appellant must have acted in good faith in starting the prosecution, after having obtained the opinion of the State's attorney,—that his advice should protect a party commencing such a proceeding, without reference to good faith. The law in all cases requires good faith, or, rather, a belief that the accused is guilty of the crime charged. The person claiming the accused is guilty, may know or believe he is not, although the attorney may suppose he is. This portion of the instruction was approved in *Skidmore* v. *Bricker*, *supra*. Nor are we disposed to overrule or modify the doctrine.

It is, however, urged, that the cases of *Calef* v. *Thomas*, 81 Ill. 478, and *Anderson* v. *Friend*, 85 id. 135, announce a different rule. The rule in those cases is stated in general terms, and perhaps not with exact precision. In the former of those cases it was said, that if the defendant in good faith communicated to the State's attorney all the material facts affecting the question of the plaintiff's guilt which were known to him, and he acted on such advice, the presumption of malice was rebutted. The question whether the fact that the attorney consulted was the State's attorney was conclusive

that he was reputable, reliable and competent, was not presented in those cases. They are not authority in this case.

What has been said disposes of the objections to the sixth and seventh of plaintiff's instructions.

But objections are urged against the tenth instruction of plaintiff. It is this:

"While the law permits the impeachment of a witness by proving his general reputation for truth and veracity in the neighborhood where he resides to be bad, yet if you believe that the plaintiff, while on the stand, gave a truthful, candid and honest statement of the facts and circumstances surrounding the transaction in question, then the jury should not disregard his testimony, but you should give it such faith and credit as in your opinion it is entitled to."

We are unable to perceive any error in this instruction. A jury should never give the slightest weight to testimony, however positive, which they believe to be untrue. On the other hand, they should give full weight to all which they believe to be true. The very purpose of testimony is to establish the truth of the contested proposition. This instruction does not assert that the jury may believe an impeached witness. If he was impeached, then his evidence would be unworthy of belief, and it should have no weight. The instruction states correctly that the law permits the impeachment of a witness by proving his general reputation for truth and veracity is bad; but if the evidence fails to prove that fact to the satisfaction of the jury, the witness is not impeached, nor is he if, after hearing the impeaching testimony, the jury still believe his evidence to be true. Whilst this instruction is not artistically drawn, it does not state an incorrect rule of law, and we think did not mislead the jury, and it was not error to give it.

Complaint is made that the court refused to give the tenth and twelfth instructions asked by appellant. The tenth was

erroneous because it omitted essential facts to establish probable cause. As we have seen, appellee took the beans openly, in daylight, and publicly, under claim of right, of which appellant had notice. If probable cause is a question of law, it would have been the duty of the court, had it been asked, to have instructed that there was not probable cause. It would therefore have been error to instruct that there was probable cause, and the instruction was properly refused. The substance of the twelfth instruction had, in a different form, been given in other of appellant's instructions.

Complaint is made that the court committed error by instructing the jury as to the manner in which they should act in finding the amount of damages. The jury returned a verdict for plaintiff, and on being polled the court permitted the question to be asked as to the manner in which they had assessed the damages. It appeared in answer to the question, that each juror fixed a sum, and all of these sums were placed on a piece of paper, added up, the sum divided by twelve, and the quotient taken as the verdict. The court thereupon, of its own motion, gave the jury this instruction:

"If your verdict be in favor of the plaintiff, you can not, in determining the amount of damages for the plaintiff, add together the respective amounts named by each juror, and divide the sum by twelve, the number of jurors, but must determine and agree upon the amount of damages collectively, and as one body."

The court thereupon sent the jury out again. It is urged that the court had no power to so instruct of its own motion, or to require the jury to retire and further consider of their verdict. It has been repeatedly held that the court has ample power to instruct *sua sponte,*—and it may be added, such is its duty, when the promotion of justice demands it. Courts are created to administer justice, and not to sit by and see it defeated and wrong perpetrated, when it can be

avoided by the judge without transcending his powers or invading the province of the jury. In this case, giving the instruction and causing the jury to further consider of their verdict, was clearly within judicial power, and the court committed no error in its exercise.

The jury again returned a verdict for the same amount, and on being polled, each juror said it was his verdict. It is, however, insisted, that inasmuch as the verdict is for the same amount, the result must have been reached by addition and division, as before, and it should have been set aside. It does not follow that it was, because the amounts are the same, and under the last instruction we must presume the jury conformed their action to its requirements. Moreover, each juror said it was his verdict, which repelled such a presumption. It was error to permit the jurors to testify or be questioned as to the mode in which they arrived at the amount of damages. No rule is better or more firmly established than a juror can not testify to impeach a verdict he has participated in finding. But the error was that of appellant, and of it he can take no advantage. Such practice is not to be encouraged, as it violates well and firmly established rules, and must, if permitted, lead to abuse.

We perceive no error in overruling the motion for a new trial. If there is error, we are unable to review it. The amount of damages is a question of fact, which we are precluded from considering.

Perceiving no material error of law, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*