ISAAC OSGOOD *et al.*

*v.*

WILLIAM GROSECLOSE *et al.*

*Filed at Mt. Vernon January 20, 1896.*

1. EVIDENCE—*one alleging contract by special plea has the burden.* The burden of proving a special plea setting up a contract different from that set up by the plaintiffs is on the defendants.

2. SET-OFF—*when price of property sold but not delivered cannot be set off.* A payment for property which has not been delivered to the purchaser cannot be claimed as a set-off by him when it is ready to be delivered, unless the property has been converted.

*Osgood* v. *Groseclose,* 58 Ill. App. 29, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Alexander county; the Hon. OLIVER A. HARKER, Judge, presiding.

BOYER & BUTLER, for appellants.

LANSDEN & LEEK, for appellees.

Per CURIAM: We agree with the conclusions reached by the Appellate Court in this case, as set forth in the following opinion rendered by Mr. Justice SAMPLE:

"The appellees obtained a judgment for an alleged balance due them for lumber manufactured at their mill at Randall, Missouri. The contract of sale was verbal, about which there is no dispute, except as to the inspection and amount of lumber sold. The appellees claim, and so testified, that they were to have as good as St. Louis inspection, on which they had been selling, and on disagreement 'the trade was to be at an end.' One of the appellants testified the sale was on Chicago inspection. The other testified that from subsequent conversations he so understood the contract. The appellants also claim they purchased all of the cut of the year 1892, which they did not receive by at least 150,000 feet. The appellees

deny they sold any definite quantity of lumber. The lumber was to be delivered by appellees f. o. b. cars at Randall. The first delivery under the contract began about July, 1892, and continued to be delivered at various intervals, until, in February, 1893, the appellees refused to deliver any more lumber, on account, as claimed, of the unjust inspection of appellants, which, it is said, made a difference in the price of from two to five dollars on the thousand feet. The trouble about the inspection began in September, 1892, and continued at various times until February, 1893. At this latter date, according to appellees' account, there was due from appellants the sum of $973.49, and according to the latter's account $975.55. The appellants claimed they were entitled to all the cut of the mill for 1892, and refused to pay appellees' claim unless they would agree to deliver all of the cut of that year. They were ready, and testify they so informed appellees, to then deliver their check, which was good, for the balance, according to their account, of $975.55, if the appellees would then agree to deliver the cut of 1892 in the future. The parties disagreed, and hence this suit.

"The declaration counts for lumber sold and delivered. It contains only the common counts. The defendants (appellants) pleaded the general issue and set-off. In the latter plea the claim is made that plaintiffs failed and refused to deliver a large amount of lumber under their contract, whereby defendants were greatly damaged, etc. The claim of appellants is, this damage, on the basis of 150,000 feet not delivered, would amount to $1500.

"It appears from the evidence that cash payments were not always made, as agreed upon, but that on December 6, 1892, there was due appellees the sum of $4094, for which, on that date, appellants gave their two notes, —one for $2094, due in thirty days, and one for $2000, due in sixty days after date, which were paid when due. At this time the appellees had sawed out for appellants a

lot of wagon tongues, of the value of $271.08, which had not been delivered, but were included in the $4094 for which the notes were given. It further appears that the tongues were still in the yard at the time this suit was brought, and that no demand was ever made by appellants on appellees to load the same on the cars. Appellees were ready to do so at any time when requested. It is evident that appellants directed where the cars were to be billed and when appellees were to load them, although appellees ordered the cars. The Osgoods had the lumber shipped to different places where they made sales, as we understand the evidence, which is very meagerly set out in the abstract.

"The appellants rely upon erroneous instructions for the reversal of the judgment below. The first error relied upon is, that by appellees' third instruction appellants were deprived of the right to credit the $271.08 paid for wagon tongues not delivered. The effect of the instruction was, that appellants were not entitled to this credit unless the evidence showed the appellees had converted the tongues. The tongues belonged to appellants, who could have had them on demand, and therefore they were not entitled to such credit. They evidently so understood when they tendered the check for $975.55.

"The first and second instructions given for appellees, of which complaint is made, were to the effect that if the jury believed, from the evidence, the appellees were to have St. Louis inspection, and that on disagreement they could terminate the contract, then, if the parties did in good faith disagree, they had the right to terminate the contract. There was evidence to sustain these instructions.

"Complaint is also made of the fourth instruction given for appellees. It was to the effect that the burden was on appellants to prove their plea of set-off. It alleged a purchase of all the cut of 1892 and the failure of appellees to deliver such cut, whereby appellants lost large profits

on contracts made by them. The instruction is sustained by *Kelly* v. *Garrett*, 1 Gilm. 649, and *Laird* v. *Warren*, 92 Ill. 204. The appellants were bound to prove their plea, which included the contract there set out. After such proof it would devolve on the appellees to show there was no such contract. (*Robinson* v. *Parish*, 62 Ill. 130.) The burden of proof is determined by the pleadings. (*Phelps* v. *Jenkins*, 4 Scam. 48.) 'Whenever, whether in plea or replication or rejoinder or sur-rejoinder, an issue of fact is reached, then, whether the party claiming the judgment of the court asserts an affirmative or negative proposition, he must make good his assertion. On him lies the burden of proof.' (1 Wharton on Ev. sec. 354.) The jury were fully instructed that the plaintiffs ·must make out their case by a preponderance of the evidence. The defendants were required to do the same on the defense set up in the special plea. They could not, by setting up in their plea a contract different from that set up by plaintiffs, cast the burden of proof on the latter to show there was no such contract. *Robinson case, supra,* is in point.

"The case was fairly tried on its merits, and the judgment is affirmed."

The principal contention in this court is, that the trial court erred in giving to the jury, at the request of plaintiffs below, the third instruction, in relation to the credit of $271.08 claimed by defendants as so much money paid by them for wagon tongues which plaintiffs had not delivered. This is the instruction:

"The court instructs you, that although you may believe, from the evidence, that there is now in the yard of the plaintiffs at Randall, Missouri, some two hundred and seventy odd dollars worth of oak tongues, for which the defendants had paid the plaintiffs in their settlement about November 29, 1892, when the plaintiffs took the defendants' two notes for some $2000 each, yet the defendants are not entitled to claim credit for said tongues,

under the pleadings in this cause or otherwise, in the absence of evidence to show that the plaintiffs have converted them to their own use or refused to deliver said tongues to defendants.    Said tongues, on payment therefor, became the property of the defendants without any delivery thereof by the plaintiffs to the defendants."

Counsel are in error in insisting that the judgment includes this $271.08 for the wagon tongues.    The tongues had been previously paid for, and the defendants were claiming credit on the account sued on for so much money paid for the tongues, which they claimed had never been delivered,    It was not disputed that the tongues were in plaintiffs' yard ready to be delivered and had been paid for, and there was no evidence that the plaintiffs had converted them to their own use or refused to deliver them on demand.    They were the property of the defendants, and defendants were not entitled to any credit for their value, or the amount paid for them, in the absence of conversion or refusal to deliver by the plaintiffs.    As applied to the evidence the instruction was a proper one.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*