## THE NORTH CHICAGO STREET RAILROAD COMPANY

*v.*

## RUTH E. SHREVE.

*Opinion filed February 14, 1898.*

1. TRIAL—*objections are ineffectual unless ruled upon.* Objections by counsel to opponent's remarks in addressing the jury do not preserve the question of the propriety of such remarks for consideration on appeal, unless pressed upon the attention of the court, a ruling obtained thereon and exception taken to the ruling.

2. INSTRUCTIONS—*when instruction concerning permanency of injury is warranted by the evidence.* An instruction that if the jury believed the plaintiff's injury was permanent they might consider that fact in assessing damages, is not unwarranted by the evidence where, though no medical expert testifies to its permanency, the evidence shows that the injury was very serious, and it appears from the plaintiff's uncontradicted testimony that since the injury, three years previous, her health had been "almost a total wreck."

3. SAME—*instruction defining "material facts," with reference to their misrepresentation by witness, should be refused.* An instruction which attempts to define what the term "material facts" includes, asked with reference to an instruction given for the other party concerning the effect upon the credibility of a witness of his misrepresentation of material facts, is properly refused.

*North Chicago Street R. R. Co. v. Shreve,* 70 Ill. App. 666, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

This is an action by Ruth E. Shreve to recover damages for personal injuries alleged to have been sustained by reason of the negligence of the North Chicago Street Railroad Company. The declaration alleged that on the 12th day of October, 1893, the plaintiff was a passenger upon a car of the defendant, and in attempting to alight was, through the negligence of the defendant, thrown to the ground, whereby she was greatly bruised and permanently injured, and received the injuries complained of, which also caused the death of her unborn child.

The facts as they appear from the testimony of the plaintiff are, in brief, as follows: On the afternoon of the 12th of October, 1893, the plaintiff was a passenger on a trailer of the North Chicago Street Railroad Company, in the city of Chicago, and desired to go to South Water street, but finding the cars turned off on Randolph street and that she was going in the wrong direction, she signaled the conductor to stop. As she was alighting from the car near the corner of Dearborn and Randolph streets, and holding on with her right hand, she put her right foot on the side-board or step of the car, and was in the act of putting her left foot to the ground when the car gave a quick jerk and she was thrown on her right side onto the granite pavement of Randolph street, thirty or forty feet west of the Dearborn street cross-walk. The conductor saw her fall and helped her up. She walked a couple of blocks, to No. 149 Wabash avenue, her husband's place of business, and then, after resting awhile, went home. She, as she testified, was sore and stiff all over and could hardly walk, and was hurt in some way, she could not tell how much; that at the time of the injury she was between five and six months in a family way; that she was hurt internally, in her right side, and in her hip; that on the Monday following,—four days after the injury,—labor pains began, and she was confined to her bed and under the care of a physician from October 16 to November 16, suffering much of the time with intense pain, which finally resulted in a premature delivery of her child November 16, 1893; that the side of the head of the child, when born, was black and blue and its hips discolored; that during this time her condition was critical, and her misery was so intense she was kept under opiates; that she did not get out of bed until the first of December; that before the injury she was always very healthy, and since that time her health has been almost a total wreck; that she has pains now in her womb and ovaries most all the time, and is very nervous, and is

seldom or never without a headache; that before this fall she never had a spell of sickness in her life; that she knew the child was alive before the time of the accident by the motion of the child in the womb.

As to the accident the plaintiff was corroborated by her brother and his wife, who were with her on the car at the time, and who testify that the sudden jerk of the car at the time plaintiff was injured threw them back in their seats. These witnesses alone testified as to the manner in which the accident occurred, and were not contradicted by the defendant, as it claimed to have no report of the accident.

At the trial the jury found a verdict in favor of the plaintiff and assessed her damages at the sum of $5000, but a *remittitur* of $3000 was made and judgment entered on the verdict for $2000, to reverse which the defendant appealed to the Appellate Court for the First District, which court affirmed the judgment of the trial court, and the defendant appealed to this court.

EGBERT JAMIESON, and JOHN A. ROSE, for appellant.

EDWARD MAHER, and CHARLES C. GILBERT, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Of the assignments of error it will be necessary to consider only those two discussed by counsel for appellant in their argument, viz.: That the attorney for appellee made improper statements in his argument to the jury; and that the court erred in instructing the jury.

Counsel for appellant insist that the argument of the attorney for appellee before the jury is reversible error, and quote extracts therefrom. An examination of the record shows that much latitude was allowed the attorneys for both appellant and appellee in addressing the jury. This court has repeatedly held that there must be

a ruling of the trial court, to which exception is taken, or the objection will be ineffectual. The record shows in this case that objection was made and exception taken, but no ruling was made by the court. The record does not show that the court *refused* to rule, or that the matter was pressed upon the presiding judge to rule on the question. In *Marder, Luse & Co.* v. *Leary*, 137 Ill. 319, this court said (p. 323): "The remark, 'I except to that statement,' meant nothing, in a legal sense, in the connection in which it occurred. The court had made no ruling to which it was applicable; and if it was intended to be an objection it was ineffectual, because it was not pressed upon the attention of the judge and his ruling obtained thereon." See, also, *Elgin, Joliet and Eastern Railroad Co.* v. *Fletcher*, 128 Ill. 619; *North Chicago Street Railway Co.* v. *Cotton*, 140 id. 486; *Pike* v. *City of Chicago*, 155 id. 656; *West Chicago Street Railroad Co.* v. *Annis*, 165 id. 475.

Upon the trial the court gave the following instruction for the plaintiff:

"The court instructs the jury, that if you find the issues for the plaintiff in this case, then the plaintiff is entitled to recover such actual damages as the evidence may show she has sustained as the direct or approximate result of such injury, taking into consideration her pain and suffering, so far as the same may appear from the evidence in the case; and if the jury find, from the evidence, that the said injury is permanent and incurable, they should take this into consideration in assessing the plaintiff's damages."

It is not contended that this instruction fails to state the law correctly, but the objection is that there is no evidence of permanent injury upon which it can be based. It is true, no medical expert testified as to the injury being permanent; but the plaintiff testified on the trial of the case, nearly three years after the injury was received and after the miscarriage occasioned by the injury, as follows: "Before that time I was always very

healthy, *and since that time my health has been almost a total wreck.* I have suffered a great deal, more or less, with the internal injuries that I received then, and also in my back. It hurt me—in fact it has hurt me all over. These pains are right in the small of my back and across my hips—just right at the spine. I have pains in my womb and my ovaries most all the time, and they have left me very nervous. It is a complete nervous shock. It has left me that I am very seldom or ever without a headache. It is always in the top of my head and right down the back of my neck, at the base of the brain. Before this fall I never had a spell of sickness in my life. I have not conceived a child since the shock or the accident. The next spring I was somewhat irregular, and I went to the doctor and he gave me a prescription, and that was the end of it. After that I have been—I can't say I have been regular, but I have been more so than I was. My menstruations are a great deal more so than they were,—that is, I flow more frequently and more abundantly, and my misery at that time is a great deal more than what it was before. I have an excess of pain contrasted with my former condition. * * * *I have pains in my womb now and in my ovaries.* I have headaches also, *and my strength isn't what it used to be.*"

This testimony was uncontradicted, and at least tended to prove that the injury was permanent. The fact that the death of the unborn child was caused by the injuries received, followed by a miscarriage, with its attendant dangers, shows their serious character. The language of the plaintiff that since the time of the accident "my health has been almost a total wreck," conveys the idea that her health has been ruined or destroyed. These are the words of the plaintiff, who received the injury—the only person who could describe her sufferings and injuries, and the effect the injuries had had upon her health so long a time after the accident. The jury saw the witness upon

the stand, and had an opportunity to form some estimate of her condition of health from her appearance, in connection with her testimony as to its serious and permanent character.   The physician who attended her after the accident and during her miscarriage testified that she suffered a great deal of pain.   He examined her in 1896, the accident having occurred in October, 1893, and found an "ante-version," or tipping of the womb towards the bladder or front.   This testimony, if true, when all considered, in our opinion was sufficient to justify the instruction.   Moreover, under the instruction the question of permanent injury was to be taken into consideration in assessing plaintiff's damages.   If the judgment was excessive, the *remittitur*, to a great extent, at least, obviated that objection.   *Albin* v. *Kinney*, 96 Ill. 214.

Counsel for appellant urge as error the refusal of the court to give appellant's seventeenth *refused* instruction in connection with appellant's eighth *given* instruction. The following is the eighth instruction given:

"The court instructs the jury, that if they believe, from the evidence, that any witness has willfully and deliberately testified false to any material fact in this case, then the jury may entirely disregard all the evidence of such witness, except in so far as he may be corroborated by other credible evidence or by circumstances and facts, as shown by the credible evidence in the case."

The seventeenth refused instruction was an attempt to define what the term "material facts" included, and was unnecessary, and was properly refused.

Finding no sufficient error in the record for which the judgment should be reversed, the judgment of the Appellate Court is affirmed.                    *Judgment affirmed.*