## Phoebe Matthews v. Elmer Granger.

1. REPLEVIN—*Where the Pleadings do not Present the Question as to Whether, Under the Terms of a Chattel Mortgage, Written Permission to Sell Property was Necessary.*—Where defendant in replevin pleads she seized the property of plaintiff under a mortgage, for selling certain mortgaged property without her permission, and plaintiff replies he did not sell without her permission, the pleadings do not present the question whether, under the terms of the mortgage, written permission to sell was necessary.

2. SAME—*When Permission to Prove a Subsequent Mortgage is Properly Refused.*—Where a mortgagee, defendant in replevin, pleads she seized the property because of a sale of certain crops without permission, contrary to the mortgage, it is not error to refuse to permit her to prove the subsequent mortgage of a horse, covered by her mortgage, without her permission.

3. INSTRUCTIONS—*Singling Out a Witness by Name Improper.*—It is not error to refuse an instruction singling out a witness by name.

4. SAME—*Impeachment of Witnesses.*—It is not error to refuse an instruction that "if a certain witness testified at a former trial of this case with reference to any material matter at variance with his testimony on this trial such fact tended to impeach him, and unless he was corroborated the jury had a right to disregard his entire testimony," where the issues had been entirely changed since the former trial.

5. SAME—*Where a Witness Has Willfully Testified Falsely.*—It is only where a witness has willfully testified falsely in a matter material to the issue being tried, or has been successfully impeached, that the jury are authorized to disregard his entire testimony, except where corroborated. If, notwithstanding the evidence tending to impeach a witness, the jury still believe his evidence to be true, they are not at liberty to disregard it.

6. TRIALS—*The Question of the Misconduct of Counsel, How Raised.* —Questionable remarks of counsel to the jury can not be considered unless the party complaining thereof has procured an adverse ruling by the court and preserved an exception thereto.

7. SAME—*Action of the Court in Denying a Change of Venue, How Preserved in the Record.*—The action of the court in denying a change of venue is not preserved for consideration unless the petition for the change of venue is contained in the bill of exceptions, and an exception to the order of the court thereon, nor is there any ground of complaint if the cause is tried by another judge than that named in the petition.

8. SAME—*Not Error to Refuse a Challenge for Cause Where the Party Afterward Challenges Peremptorily.*—Refusing to sustain a challenge for cause against a juror, if the party afterward challenges the juror peremptorily and has not exhausted the peremptory challenges, is not error.

Replevin.—Appeal from the County Court of Mercer County; the Hon. LUCIAN ADAMS, Judge, presiding. Heard in this court at the October term, 1900. Affirmed. Opinion filed July 12, 1901.

CONNELL & THOMASON and D. B. SNOW, attorneys for appellant.

JAMES M. BROCK and GUY C. SCOTT, attorneys for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Mrs. Matthews was Granger's landlord and held a chattel mortgage from him to secure the rent. Claiming he had violated conditions of the mortgage she seized the mortgaged property. Granger brought this action of replevin to recover its possession. The first and second trials resulted in judgments in favor of Granger, which we reversed in 66 Ill. App. 121 and 71 Ill. App. 467. A third trial resulted in a verdict for Granger, and a fourth trial in a verdict for Mrs. Matthews, each of which the court set aside. At the fifth trial there was a fourth verdict for Granger, and a judgment thereon, from which Mrs. Matthews appeals.

1. Much reliance is placed by defendant upon the views heretofore expressed by this court upon the questions of fact. Those views do not compel another reversal upon the facts, both because plaintiff has now had four verdicts in

his favor, which ought to be decisive of the facts if no serious errors of law have intervened, and because the issues have been changed since we last remanded the cause, which was September 20, 1897. There are but two pleas in the present record. On September 26, 1899, defendant filed what is called an additional plea, setting up a mortgage by plaintiff to J. H. Calhoun of the horse "Fred" as a violation of the mortgage to defendant. To this plea a demurrer was sustained on September 27, 1899, and that ruling is not assigned for error. Defendant afterward asked leave to re-file a plea, and it is claimed the motion referred to said additional plea. The motion does not appear to have been decided, but if it was, no exception was taken and no error is assigned upon its denial. An amended and substitute plea was filed September 28, 1899, and upon it alone the cause was tried the last time. In that plea Mrs. Matthews set up her lease to Granger; his chattel mortgage, made for a sufficient consideration, to secure the rent; that it provided that if any one sold or disposed of the mortgaged chattels, or attempted to do so, without her authority or permission, she might take possession of the mortgaged property; that, the debt being unpaid, and she still owner thereof, Granger sold and disposed of potatoes, threshed oats and corn, covered by the mortgage, and also attempted to call and dispose thereof, all " without the proper authority or permission of this defendant;" that this was a breach of the mortgage, and because thereof she seized and detained the mortgaged property, as she lawfully might; and that this was the taking and detention in the declaration mentioned. Plaintiff replied " that he did not, without the permission of the defendant, sell or attempt to sell, and did not, without the consent of defendant, dispose of any of the property which said plea charges he sold and attempted to sell, and which said plea avers he disposed of, all without the consent of defendant;" and that there was no consideration for the execution and delivery of said mortgage by him. This replication might well have been questioned for duplicity, but defendant did not demur. The replication tendered

an issue to the country. The parties went to trial upon it, thus treating it as if a formal similiter had been added. The issues therefore were, (1) did Granger sell or attempt to sell or dispose of any potatoes, threshed oats or corn, covered by the mortgage; (2) if so, was this without the consent or permission of Mrs. Matthews; and (3) was there a sufficient consideration for the mortgage. The pleadings raised no other issue at the last trial. Mrs. Matthews' plea charged that Granger sold and attempted to sell without her proper consent and permission, in violation of the mortgage. That plea concluded with a verification. Granger's replication was a mere denial of the allegations of the plea. It did not aver any new facts. By this form of pleading the burden was upon Mrs. Matthews to prove that Granger had violated the mortgage by selling or attempting to sell mortgaged property without her consent. (Osgood v. Groseclose, 159 Ill. 511, 514.) We are not called upon to determine whether a plea could have been so framed as to cast upon Granger the burden of charging and proving her consent. Mrs. Matthews tried the case upon the theory that the burden of proving that Granger's acts were without her consent was upon her. The first mention of consent at the trial was the testimony of Mrs. Matthews in her own behalf in chief that she gave neither oral nor written consent. Instructions numbered 13, 25, 26, 27 and 28, as offered by defendant, placed upon her the burden of showing acts by plaintiff violative of the mortgage without her consent or permission; and though they were modified in other respects, in this particular they were given as asked by defendant. The court, therefore, did not err in so trying the case as to leave upon her the burden of sustaining her plea.

2. The mortgage offered in evidence required consent "in writing expressed." Plaintiff did not claim written, but only oral consent for his deviations from the mortgage; and it is insisted the court erred in so instructing the jury as to make oral consent sufficient. Defendant did not set out her mortgage *in haec verba* in her plea. She was there-

fore bound to state it according to its legal effect. She there pleaded it as providing that if any one sold, etc., "without the authority or permission of the said mortgagee," it should be lawful for her to take possession of said chattels. This construction by her in her plea of the legal effect of her mortgage, must, we think, bind her at the trial. Proof of oral consent would relieve the mortgagor from liability of his property to seizure under that clause of the mortgage as pleaded. Defendant could not state one right in her plea, and be permitted to rely upon a different right at the trial. The closing part of the plea was that plaintiff did sell, etc., " without the proper authority or permission of this defendant." This can only be referred to the authority or permission the plea averred the mortgage required, which would be as well satisfied by oral as by written consent.

The replication averred that plaintiff did not sell, etc., without defendant's consent, and she did not demur, or reply that written consent was necessary and was not obtained, but went to trial as if a similiter thereto had been filed. Defendant tried the case the last time on the theory that under her plea oral consent was sufficient. She proved in chief that she did not give oral consent. Manifestly, after she had proved that, plaintiff had the right to meet her proof by testimony that she did give oral consent. Defendant obtained several instructions which assumed oral consent would be sufficient. She presented thirteen questions to be propounded to the jury for special findings, six of which inquired of the jury whether defendant had given plaintiff verbal authority or permission to do certain acts therein specified. The court consolidated these into six questions, each embracing the question of verbal authority or permission. True, defendant also asked an instruction that written permission was necessary, and oral consent insufficient, but in view of the state of the pleadings, the course of the trial, and the other instructions defendant obtained, we are of opinion the court correctly refused it. The question whether, under such a mortgage properly pleaded oral, per-

mission to sell would justify the tenant in selling, is not presented for decision by the present record.

3.   The lease covered 145 acres.   The rent was a share of the crops, and cash rent for the pasture.   By the terms of the mortgage, strictly construed, plaintiff could not eat potatoes or anything else grown in the garden, nor feed his horses anything grown on the premises.   Defendant admits two verbal modifications, one of the lease and one of the mortgage, and one in her favor.   She had intended to reserve in the lease one room in the house for her own use, but forgot it.   Plaintiff and defendant afterward verbally agreed she might have that room.   Defendant admits she authorized plaintiff to use some sheaf oats covered by the mortgage, he to replace them by returning her an equal number of sheafs when the oats were threshed, which the proof shows he did.   Plaintiff testifies that the consideration for the modification of the lease in defendant's favor about the room was her agreement that he should use the proceeds of the garden, he telling her it was a mistake that the garden had been included in the chattel mortgage, and she replying to go ahead and use it just as if it was not covered by the mortgage, and it would be all right.   This she denies.   He further testifies that after the mortgage was given he told her he would have to use his share of the crops as they matured to keep his family and stock; that she replied to go ahead and use it, that there was no law to prevent his using it to keep his stock and family.   This also she denies.   Plaintiff sold a peck of potatoes to a neighbor for use during harvesting, and received twenty-five cents therefor.   These potatoes were dug in the garden.   There is no proof he sold anything else raised on the farm, though there were circumstances which caused defendant to suspect he had disposed of some other items.   He offered to sell that neighbor some more potatoes for use during harvesting if she could not get them elsewhere.   He fed his stock from his share of the crops, and talked with neighbors about exchanging some corn for hogs, and perhaps discussed or proposed some other exchange.   The jury specially found

that none of these acts were without the verbal authority or permission of defendant. We are not warranted in disturbing their decision of these questions of fact.

4. The mortgage covered a horse, "Fred," and it is argued the court erred in refusing to permit defendant to show that plaintiff afterward mortgaged the horse to J. H. Calhoun. This was not competent, for the plea upon which the case was tried only averred a sale, etc., of potatoes, threshed oats and corn, and not of this horse. Besides, in her motion for a new trial, defendant did not assign any rulings of the court in the admission or exclusion of evidence as a ground for such motion. When a party files his motion for a new trial and specifies the grounds of his motion, he is confined on appeal to those reasons specified and set forth in his motion in the court below, and is held to have waived all causes for a new trial not so stated. (West Chicago St. R. R. Co. v. Krueger, 168 Ill. 586; Metropolitan West Side R. R. Co. v. White, 166 Ill. 375.) Defendant waived this and all other alleged errors of the trial court in its rulings upon the evidence. After we granted defendant a rehearing in this cause she asked leave to assign as an additional error the rulings of the court upon the evidence. This we refused, both because the question could not be presented here upon such an assignment after it had been thus waived in the trial court, and also because a rehearing is only granted for the purpose of correcting errors into which the court may have inadvertently fallen in deciding the case as originally presented, and not to allow a party to present a different case from the one first submitted. Gaines v. Williams, 146 Ill. 450; Conductors' Benefit Association v. Leonard, 166 Ill. 154.

5. The court refused instructions 21 and 22 offered by the defendant. No. 22 was to the effect that if Frank Snell testified at a former trial of this cause with reference to any material matter at variance with his testimony on this trial, such fact tended to impeach him, and unless he was corroborated the jury had a right to disregard his entire testimony. The practice of singling out a witness by name

has often been disapproved. The tendency of such an instruction is to impress the jury with the idea that the court sees some special reason for discrediting the testimony of the witness so named. While it may not be reversible error to give such an instruction, its refusal is generally approved. (Phenix Ins. Co. v. LaPointe, 118 Ill. 384.) The issues were different at the last trial from what they had been before. Under this instruction the witness could be treated as impeached by showing his contradictory statement in a matter material at the former trial but not material at this trial. Moreover, it is only where the jury conclude that the witness has willfully testified falsely in a matter material to the issue being tried, or that he has been successfully impeached, that the jury are authorized to disregard his entire testimony, where not corroborated. (Bowers v. The People, 74 Ill. 418; Miller v. The People, 39 Ill. 457.) This requires a successful impeachment. Proof of prior, inconsistent statements, whether under oath or not, is merely evidence tending to impeach the witness. It is not successful "if, after hearing the impeaching testimony, the jury still believe his evidence to be true." (Roy v. Goings, 112 Ill. 656, 666.) It is for the jury to determine under proper instructions whether the impeachment has been successful. (Bressler v. The People, 117 Ill. 422, 441; Loehr v. The People, 132 Ill. 504.) If, notwithstanding evidence tending to impeach a witness, the jury still believe his evidence to be true, they are not at liberty to disregard it. (Roy v. Goings, *supra*.) Under the instructions here drawn in question the witness might have fully explained his former inconsistent testimony and shown it to be due to an innocent mistake, and the jury might believe the witness testified truly on this trial, and yet the jury would be authorized to disregard his testimony. An instruction on this subject much more nearly correct was disapproved by the majority of the court in Healy v. The People, 163 Ill. 372. It is true the principle of this instruction, when applied generally, was apparently approved in Johnson v. Johnson, 187 Ill. 86, but the point there under discussion was only as

to the effect of corroboration. The cases there cited each required either successful impeachment or that the witness had willfully testified falsely in a matter material to the issue, to authorize the jury to reject the testimony. None of them permitted the jury to disregard the testimony of a witness merely because evidence tending to impeach had been introduced. It is evident the court in the Johnson case was only considering the effect of corroboration, and the cases cited were in point on that subject only. In Pope v. Dodson, 58 Ill. 360, the court said : " A witness can not be discredited simply on the ground of an erroneous statement; it is only where the statements of a witness are willfully and corruptly false in regard to material facts, that the jury are authorized to discredit the entire testimony. The most candid witness may innocently make an incorrect statement; and it would be monstrous to hold that his entire testimony, for that reason, should be disregarded." (Swan v. The People, 82 Ill. 610; Kornazsawaka v. West Chicago St. R. R. Co., 76 Ill. App. 366.) Instruction No. 21, directed to the testimony of plaintiff, was subject to the same and other objections. The court instructed the jury very fully for defendant, and no reversible error appears in the refusal of other instructions. The thirteen questions to the jury requested by defendant were substantially embodied in the six questions the court submitted.

6.  Counsel for Granger made some questionable remarks in his closing address to the jury, but the court sustained a part of appellant's objections thereto, and appellant did not procure any ruling adverse to her to which she preserved an exception. (North Chicago St. R. R. Co. v. Shreve, 171 Ill. 438; North Chicago St. R. R. Co. v. Southwick, 165 Ill. 494.)

7.  It is assigned for error that the court did not sustain appellant's challenge for cause against a certain juror. Appellant afterward challenged the juror peremptorily, and it does not appear that she exhausted her peremptory challenges. She was, therefore, not harmed by the ruling. (Ochs v. The People, 124 Ill. 399.)

8.  The Circuit Court changed the venue to the County

Court. It is argued this was error, as the judge of that court was disqualified to try the cause, because he had been of counsel. Neither the action of the court nor any proof of any such disqualification appears in the bill of exception, nor any exception to the action of the court. Further, the cause was tried by another judge against whom no disqualification is alleged.

The motion to tax the additional abstract against appellant is denied. The judgment is affirmed.