## Chicago, Wilmington & Vermillion Coal Co. v. Thomas Moran, by His Next Friend.

1. MASTER AND SERVANT—*Servant Has a Right to Believe Statement of Boss that His Working Place is Safe.*—A servant has a right to believe the statement of his boss that the place where his work is to be performed is safe.

2. SAME—*Degree of Care to be Required of a Boy.*—A servant of tender years is only chargeable with that degree of care and caution which would ordinarily be exercised by a boy of his age, experience and capabilities.

3. EVIDENCE—*When a Copy of a Contract is Not Admissible.*—A printed copy of a contract is not admissible in evidence when no attempt is made to produce the original or to show the offering party's inability to produce it.

4. PRACTICE—*Section 50 of the Practice Act Construed.*—The faulty counts which section 50 of the Practice act authorizes the court to instruct the jury to disregard, are such only as would be insufficient to sustain the judgment after verdict.

5. SAME—*Proper Basis upon Which to Instruct Jury to Disregard*

Chicago, Wilmington & Vermillion Coal Co. v. Moran.

*Counts.*—The proper basis of a motion to instruct the jury to disregard certain counts, is that the counts are faulty, and not that there is a variance or insufficiency of proof.

Trespass on the Case, for personal injuries.    Appeal from the Circuit Court of LaSalle County; the Hon. HARVEY M. TRIMBLE, Judge presiding. Heard in this court at the April term, 1903.    Affirmed.  Opinion filed October 23, 1903.

FRED T. BEERS, attorney for appellant.

DUNCAN, DOYLE & O'CONOR, attorneys for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Thomas Moran was seriously injured by a rock falling upon him while at work in a coal mine operated by the Chicago, Wilmington and Vermillion Coal Company.    He brought this suit against the coal company to recover damages for said injury.    His declaration consisted of an original and four additional counts, or five in all.    The first, second and third were for common law negligence, the fourth for a willful violation or neglect of a statutory duty in failing to furnish props, and the fifth for a willful violation or neglect of a statutory duty relative to a mine examiner.    Defendant pleaded not guilty and a special plea averring that at the time of the injury plaintiff was not in the employ of defendant.    To this latter plea plaintiff replied that he was at that time in the employ of defendant.    Upon a jury trial plaintiff had a verdict assessing his damages at $5,000.    Motions by defendant for a new trial and in arrest of judgment were denied.    Plaintiff had judgment on the verdict and defendant appeals.

Patrick Moran, plaintiff's father, was an experienced coal miner, and when his son, Thomas, became fourteen years of age he applied to defendant to take him into the mine to work.    This was granted upon his furnishing the statutory affidavit, and at the time of the injury plaintiff had been working with his father in the mine about two years, and had reached the age of about sixteen years.    There was in defendant's mine a passageway or entry called the

"straight north entry." The miners traveled the entries in going to and from their work, and coal cars were hauled and empties were returned along a track laid in this entry. There were "rooms" off this entry every few feet on each side, in each of which rooms two miners worked together. A switch track led into each room from the track in the entry. When the miners in a room had filled a car a driver took it out and set in an empty, so that miners generally were not required to be in the entry except in going to and from their work. But plaintiff and his father were not at work in a room. They were driving the entry, that is, they were at the end of the entry, and were extending the entry by digging out the coal there, and taking out a certain thickness of earth below and rock above the coal, to get the requisite height for the entry. They therefore were in the entry all the time. When an empty was brought for them they had no room of their own in which to set it, but it was by the driver set upon the switch in the nearest room, and when a car of coal loaded by them was taken out they had to go some distance in the entry to the nearest room to get their empty car. There was a class of employes who went through the passageways in the mine at night, "brushing" the roof of the entryways, cleaning away debris, repairing the tracks, etc.; these were called "company men," and they evidently were not fellow-servants with the men who mined the coal. Some time before this accident to plaintiff, props had been furnished plaintiff and his father, and placed in the entry near the end where they were at work. One night the company men found these props in the way of work they were doing, and they moved them back in the entry. Thereafter when plaintiff and his father needed props they went to that place to get them, and as they drove the entry further into the mine they were further away from the props. On the day of the injury the props were thirty or forty feet from the face of the entry. Patrick Moran needed some props and caps of certain lengths to support the place where he was at work, and he gave the dimensions to his son, and

told him to go and get them. Thomas went along the entry to the place where the props were, selected a prop and sawed it the required length, and then took another piece and began sawing a cap the length required therefor. The entry at that place was high enough so it was convenient to do that work there, while at the face, where his father was getting out the coal, the space was only about four feet high. While plaintiff was sawing the cap, a large rock, estimated to weigh from two hundred to four hundred pounds, fell upon plaintiff from the roof, inflicting the injuries for which this suit is brought.

It is not argued the damages are excessive. The abstract omits the evidence as to the extent of the injuries, only giving the pages of the record where it can be found. This is equivalent to an admission that the damages awarded are not excessive compensation for the injuries plaintiff sustained.

It is argued plaintiff was in the employ of his father and not of defendant. Without repeating the evidence on this subject we think it sufficient to say the jury were required by the instructions to determine this question, and we are satisfied the proof warranted their finding that plaintiff was in the employ of defendant, and indeed that the jury could not have reached any other conclusion.

It is argued the proof does not show defendant was negligent, as charged in the first three counts. Plaintiff's proof showed that some ten days before plaintiff was hurt, plaintiff's father, in the presence of plaintiff, called the attention of the pit boss to the apparently dangerous condition of the roof of the entry at the place where plaintiff was afterward hurt; that the pit boss said, all right, he would send men to fix it; that he told them to go ahead and work and that he thought it was safe enough; that it was all right; that he would fix it some time but would have to wait until the roof settled; that two days before the accident Patrick Moran, in the presence of plaintiff, again called the attention of the pit boss to the condition of the roof and told him it was getting worse, and somebody would be

getting hurt there; that the pit boss directed them to go to work, and told them there would nothing happen; that it was all right; that he would get around as soon as he could, and for them to go ahead and mind their work. Plaintiff testified that after he heard what the pit boss said he did not consider it dangerous. A driver testified to having called the attention of the pit boss to the dangerous condition of the roof at this place. Several miners testified to the fact that the rock was hanging loose in the roof at this place and in a dangerous condition for several days before plaintiff was hurt. The pit boss, a witness for defendant, did not testify as to the first of these conversations with plaintiff's father, but was examined as to the second, and testified he was there and viewed the place and found it bad, and told Patrick Moran he would have it attended to, but he denied that Moran complained of anything to him. He did not deny that he told them the place was safe enough and all right and directed them to proceed with their work. It was therefore established that the roof was in a dangerous condition; that the attention of defendant's proper officer was called to it twice, the last time the second day before the injury; that he promised to have it repaired, and that he also twice lulled plaintiff and his father into security by assurances that it was all right; that it was safe enough; that nothing would happen; and by directing them to go on with their work. Defendant claims it had the roof brushed and put in proper condition the night before the accident. Its proof was to that effect, while plaintiff's proof was that the morning before the accident the roof bore no indications of having been brushed, and that its condition had not been changed. We conclude the jury were warranted in finding either that it was not brushed that night or that the work was insufficiently done. Besides, the proof tended to show that mere brushing was not sufficient to remedy its dangerous condition, but that the roof needed to be timbered at that place to make it reasonably safe. The proof therefore warranted a verdict that defendant was negligent as charged in the first three counts of the declaration.

It is argued plaintiff was guilty of a lack of due care for his personal safety, such as to preclude a recovery. It is insisted he should have sawed the props and cap in his room, and that it was negligent to do so in the entry, where it is said he had no right to stay, and where, it is claimed, the miner assumes all the risks. The proof, however, is that plaintiff and his father had no room, but were working in the entry, driving it further into the mine, so that the entry was their place of labor. The props had been removed from the immediate proximity of the face upon which they were working, by men who represented defendant and who were not fellow-servants with plaintiff and his father. Defendant, having removed the props some distance from the face, can not be heard to question plaintiff's right to go for them to the place where defendant had put them. The only possible lack of care chargeable to plaintiff is his stopping at that particular place in the entry to saw and prepare the props and cap. But the entry there was really a part of his working place. If he had gone further in toward the face he must have still sawed them in the entry. It was more convenient to do that work there. He had a right to believe the statement of the pit boss that the place was all right, was safe enough, and that nothing would happen there. It is also to be remembered he was a boy and not an adult, and he was only chargeable with that degree of care and caution which would ordinarily be exercised by a boy of his age, experience and capabilities. We are of opinion the jury were warranted in finding plaintiff exercised due care. It follows that in our opinion plaintiff made a case entitling him to recover under the first three counts of the declaration. There was evidence tending to show the mine examiner did not perform the duties required of him by law at this place and that his omission was willful. Whether this proof was sufficient to entitle plaintiff to recover damages under the fifth count we think it unnecessary to consider, as the verdict is amply supported under the first, second and third counts. The fourth count is discussed in another connection.

Defendant offered in evidence a printed copy of a contract between the coal operators and the miners, after a witness had testified it was a true copy. Objection was made that the original document, signed by the parties, was the best evidence, and that proper foundation for the introduction of a copy had not been laid. The objection was sustained. No attempt was made to produce the original or to show defendant's inability to produce it. The objection was properly sustained.

Objection is made to each of the three instructions given at plaintiff's request. They were approved in I. C. R. R. Co. v. Cole, 165 Ill. 334, and in North Chicago St. R. R. Co. v. Shreve, 171 Ill. 438. It was unnecessary to repeat the propositions they contained, but the repetition was not error. Defendant asked twenty-nine instructions, many of them of great length, some covering a printed page, and one covering nearly two printed pages. The court gave a part of them as requested, modified eight and gave them as modified, and refused sixteen. We have examined the modifications made by the court, and find some of them were essential to make the instructions correct, and the others improved the instructions, and that by no modification was defendant deprived of any principle of law to which it was entitled. The modification of the twelfth made against plaintiff instead of defendant. It would unduly extend this opinion to discuss each of the sixteen refused instructions in detail. Two of them were to the effect that plaintiff could not recover under the first and fifth counts of the declaration. That relating to the first count was properly refused. We think there was such evidence under the fifth count as made it proper to refuse that instruction.

The court refused the fifteenth instruction, which was that plaintiff could not recover under the fourth count. That count averred it was the duty of defendant to provide a sufficient supply of props, caps and timber to the miners, in suitable lengths and dimensions for securing the roof, and to place the same in a reasonably convenient and

reasonably safe place, so that the miners might secure possession thereof for use in propping and securing the respective places where they were at work, by force of the statute; and that defendant, disregarding that duty, knowingly, willfully and negligently delivered props, caps and timber to be used by plaintiff in and about securing the place where he was at work, in an unsafe and dangerous place in an entry adjoining the place where he was at work; by means whereof, while plaintiff was endeavoring to secure some of said props, caps and timber, to make his place reasonably safe for working therein, and while engaged in the line of his duty as a coal miner in said mine and exercising due care for his own safety, he was thrown down by part of the roof in the entry where said props, etc., had been placed, falling and striking him, etc. The proof under this count related to the removal of the props and caps farther into the entry by defendant through its company men, not fellow-servants of plaintiff, to which proof we have already referred. It may well be that this proof was insufficient to show a violation of the statute referred to in the fourth count, or to establish common law negligence under said count, if the reference therein to the statute be treated as surplusage. We are disposed to hold the instruction now under consideration might well have been given. But it does not follow that its refusal was reversible error. In Consolidated Coal Co. v. Scheiber, 167 Ill. 539, referring to the 50th section of the Practice act, the court said: "The faulty counts which the statute authorizes the court to instruct the jury to disregard, are such only as would be insufficient to sustain the judgment after verdict." In I. C. R. R. Co. v. Weiland, 179 Ill. 609, the fifth count of the declaration set up a material promise by defendant to its employe, the plaintiff, upon which it is averred he relied in continuing a dangerous work, wherein he was injured. There was no evidence such a promise was made. Instructions were asked by defendant directing the jury to disregard each count, and among them the fifth count. These instructions were refused. The court

said the third, fourth and sixth counts were amply sufficient to sustain the judgment and were applicable to the case made on the trial, and that if the instructions applicable to the first, second and fifth counts should have been given, the error could not operate to reverse the judgment. In Franklin Printing & Publishing Co. v. Behrens, 181 Ill. 340, the court said: "The proper basis of a motion to instruct the jury is that the counts are faulty, and not that there is a variance or insufficiency of proof." Applying the rules above stated to this case, we find that the fourth count was sufficient in form to sustain a verdict after judgment, that the instruction in question was aimed only at the supposed insufficiency of the proof thereunder, and that if it had been given, still there must have been a verdict for plaintiff under the first three counts. We therefore conclude the refusal of the fifteenth instruction could not operate to reverse the judgment.

We have carefully examined the other refused instructions, and find in each some element which makes the instruction fatally defective. Several of them would have told the jury that certain acts by plaintiff constituted a lack of due care, thus taking a question of fact from the jury. Others said it was a lack of due care for plaintiff to be in the entry. Others stated part of the facts bearing upon plaintiff's presence there, and omitted other proof bearing upon the question whether his presence there was a lack of due care. Those parts of the refused instructions which were correct were to a considerable extent embodied in the given instructions.

We find no reversible error in the record, and the judgment is therefore affirmed.