## WILLIAM A. BEEDLE

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 26, 1903.*

1. WITNESSES—*what essential to impeachment by contradiction.* To constitute impeachment of a witness by direct contradiction, the contradiction must be such as to justify the jury in believing that the witness has willfully sworn falsely to a material matter, and it is not enough that there is a mere conflict of testimony.

2. SAME—*when jury cannot disregard testimony.* The jury cannot disregard the testimony of a witness merely because evidence tending to impeach him has been introduced or because he has made an erroneous statement.

3. SAME—*it is for the jury to say whether witness is impeached.* It is for the jury to determine, under proper instructions, whether the impeachment of a witness is established by the proof.

WRIT OF ERROR to the Circuit Court of Douglas county; the Hon. W. G. COCHRAN, Judge, presiding.

J. M. NEWMAN, and W. C. JOHNS, for plaintiff in error.

H. J. HAMLIN, Attorney General, JOHN H. CHADWICK, State's Attorney, and GEO. B. GILLESPIE, for the People.

Mr. JUSTICE RICKS delivered the opinion of the court:

At the October term, 1902, of the Douglas circuit court plaintiff in error was indicted for the crime of forgery. Upon trial he was found guilty and sentenced to the penitentiary for an indeterminate term.

Upon the trial it appeared that on April 16, 1902, defendant applied to the cashier of the Citizens' Bank of Garrett for a loan of $15, offering to give a note for such amount, with his mother, M. J. Beedle, as security. The cashier informed him that such note would be accepted, and wrote out a note for Beedle to take to his mother to sign. Beedle took it and went out of the bank, stating he would have his mother sign it, and in fifteen or twenty minutes brought it back with his name and that of his

mother signed to the note, whereupon the cashier discounted it and gave him the proceeds of the note. The same evening after the discounting of the note the cashier of the bank met Mrs. Beedle and asked her if she had signed a note for Bert (plaintiff in error) that afternoon, and she replied, "No, sir; I did not." He then said to her, "Didn't you sign a note for Bert for $15 this afternoon?" And she replied, "No, sir; I did not." He then said to her, "Did you give him any authority to sign your name to any note to-day?" And she answered, "No, sir; I did not." Several persons were present at this conversation, and their evidence is substantially alike. Two days after this conversation the defendant was arrested at his mother's house. There is some dispute as to whether or not the warrant was read to him at that time. However, when he was arrested he asked if the matter could not be fixed up, and the cashier, who was there with the sheriff, replied that he (the cashier) was without power to arrange any settlement of the matter. The defendant then said his mother gave him permission to sign that note, and she said, "Bert, I never; I am not going to lie for you any more," and he said, "Yes you did; you said I could have the $15; ma, you know you gave me permission to sign that note," and she said, "No, Bert, I didn't," and he said, "You told me I might have $15." It is conceded that M. J. Beedle's name was signed to the note by plaintiff in error. The foregoing constitutes practically all the evidence in behalf of the State tending to prove the want of authority to sign the name of Mrs. Beedle.

From the evidence offered on behalf of the defendant it appears that shortly prior to the foregoing transaction the plaintiff in error desired to purchase a butcher shop for $50, and had requested his mother to sign a note for that amount, which his mother refused to do. Mrs. Beedle testified that when talking to the cashier she understood he was speaking of the $50 note, and that in the

conversation had with him she had in mind a $50 note, and that when the sheriff came to her house to arrest the defendant she "had in mind a $50 note; I understood they were arresting him for the forgery of a $50 note." She further testified that the defendant came to her house with the $15 note for her to sign, and as she was very busy she told him to sign her name for her, and upon her giving him authority so to do he signed her name to the note in her presence. Julia Ritz, a sister to the plaintiff in error, testified, in substance: "I was present on the 16th day of April, when my brother came in with this note. It was in the afternoon. Mother was in the kitchen, cooking something. He asked ma that he would like to have $15—if she would sign his note. He asked ma if she would sign a note for $15 for him, and she told him she was busy and he could sign her name to it, and he did, and went to the writing desk and signed her name and his own. He showed the note to mother and went back up town in just a few minutes." This, with the note, was substantially all the evidence offered.

Upon motion for new trial the defendant filed an affidavit of Wesley Darling, a newly discovered witness, in which affidavit Darling states that he is engaged in the butcher business; that on April 16 the mother of the defendant came to the shop and asked if Bert had bought the butcher-shop; that affiant said that there was a note to that effect already made out but not signed, and Mrs. Beedle said, "I do not want him to buy the shop; I have already helped him to borrow $15 this afternoon."

The court gave the following instructions on behalf of the People:

5. "The jury are instructed that in determining the questions of fact in this case they shall consider the entire evidence introduced by the parties thereto; but the jury are at liberty to disregard the statements of all such witnesses, if any there be, as have been successfully impeached, either by direct contradiction or by proof of

such witnesses having made different or contradictory statements at other times as to any material matter in the case, except in so far as such witnesses have been corroborated by other credible evidence or by facts or circumstances proved on the trial.

6. "The credit of a witness may be impeached by proof that such witness has made statements out of court contrary to what said witness has testified on the trial, and in this case, if you believe, from the evidence, that any witness has made statements out of court contrary to what they had sworn upon the trial upon any material matter, then these contradictory statements would tend to impeach such witness, and you would be justified in rejecting her testimony, if, from all the other evidence in the case, you believe such testimony to be untrue."

It is assigned for error that the trial court erred in giving to the jury the fifth and sixth instructions above set forth, and that the evidence is not sufficient to support the verdict. As this case must be reversed and remanded for a new trial for error in the instructions, we refrain from commenting on the evidence.

The defense of plaintiff in error was predicated upon the authority given him by his mother to sign her name to the note in question, and this defense rested largely upon the testimony of Mrs. Beedle. If her evidence was believed by the jury a conviction could not be had in this case. The fifth and sixth instructions plainly were meant to apply to her testimony, and would be so understood to apply by the jury. The fifth instruction, when analyzed, tells the jury, in effect, that a witness may be "successfully impeached by direct contradiction," but does not tell them to what extent the contradiction must go. As we understand the rule, the contradiction must go to the extent that the jury may believe that the impeached witness has willfully sworn falsely upon a material matter, before he is impeached, in the sense that his evidence may be disregarded except there be cor-

roboration.   (*Howard* v. *McDonald*, 46 Ill. 123;  *O'Brien* v.
*Palmer*, 49 id. 72.)   The mere conflict of testimony is not
what is called impeaching evidence.   (*Baker* v. *Robinson*,
49 Ill. 299.)   There is seldom a trial had in court in which
the evidence upon some material point is not conflicting
and a statement of one witness absolutely contradicted
by another, but the jury, from that circumstance alone,
should not be told that if there be two witnesses, and
each of them contradicts the other, that both are suc-
cessfully impeached.   The term "impeached" means more
than that, and goes not only to what the witness testi-
fied to, but to the credibility of the witness, and unless
the jury believe that a witness has willfully sworn falsely
upon a material matter they are not authorized to disre-
gard the testimony of the witness.   If the instruction in
*Miller* v. *People*, 39 Ill. 457, cited by the People, lays down
a rule in conflict with the rule here expressed, it must be
held to have been departed from in the more recent cases
of *Gulliher* v. *People*, 82 Ill. 145, *Healy* v. *People*, 163 id. 372,
and *Matthews* v. *Granger*, 196 id. 164.

By the instruction the jury are further told that if
proof has been made that a witness has made different
or contradictory statements at other times as to any
material matter in the case, then such witness has been
successfully impeached, and the jury are at liberty to
disregard the evidence of such witness in so far as such
witness has not been corroborated, etc.   This is not the
law.   In *Gulliher* v. *People, supra,* we said: "The mere
fact, however, that he is contradicted as to some ma-
terial matter is not enough to warrant the rejection of
his evidence altogether, unless the jury believe that, as
to the matter in which he has been thus contradicted,
he has sworn falsely and knew his evidence was false."
Mrs. Beedle explained to the jury her statements out of
court on the ground that she was speaking of and had
solely in her mind the $50 note, and this evidence should
have been considered by the jury and by them weighed.

They were the judges of the credibility of the witness, yet the court in this instruction informed them that these statements had successfully impeached her testimony and that the same might be disregarded. The jury are not at liberty to disregard the testimony of a witness merely because evidence tending to impeach has been introduced, nor on the ground that he has made an erroneous statement. It is only where he has been successfully impeached, and where the statements are willfully and corruptly false in regard to material facts, that the jury are authorized to disregard the entire testimony, and it is for the jury, under proper instructions, to say the impeachment has been successful. (*Matthews* v. *Granger,* 196 Ill. 164.) The statement of Mrs. Beedle made to the cashier of the bank may have been made in reference to the $50 note, and such is her explanation; but by this instruction this explanation is discountenanced, and the jury are told that it is not necessary for them to consider or to weigh her testimony, but that it may be cast aside and totally disregarded.

The sixth instruction given on behalf of the People is almost identical with the instruction given and held erroneous in *Healy* v. *People,* 163 Ill. 372, (see also *Matthews* v. *Granger, supra,*) and should not have been given in this case. The evidence was conflicting on vital points and the testimony of Mrs. Beedle was vital to the defense. The defendant was entitled to have the jury correctly instructed, and if these erroneous instructions, discrediting the testimony of his most important witness, had not been given, the jury might have arrived at a different verdict.

For the errors above set forth the judgment is reversed and the cause remanded for another trial.

*Reversed and remanded.*