Bob G. SHUPE, Plaintiff-Appellee,

v.

NEW YORK CENTRAL SYSTEM,
Defendant-Appellant.

No. 14660.

United States Court of Appeals
Seventh Circuit.

Jan. 4, 1965.

Rehearing Denied Feb. 2, 1965.

Richard O. Olson, Edward J. Wendrow, Chicago, Ill., for defendant-appellant, Winston, Strawn, Smith & Patterson, Chicago, Ill., of counsel.

Joseph Barbera, Chicago, Ill., for plaintiff-appellee.

Before HASTINGS, Chief Judge, and KNOCH and CASTLE, Circuit Judges.

HASTINGS, Chief Judge.

Defendant New York Central System is appealing from a jury verdict and judgment for $125,000 in favor of plaintiff Bob G. Shupe resulting from injuries allegedly caused by defendant's negligence in an action brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51.

Plaintiff was employed by defendant as a janitor. His duties were to keep the locker rooms, offices and windows clean and to carry supplies from the first floor to the second floor of defendant's two-story office building. These supplies

came in cardboard boxes weighing from 25 to 100 pounds.

Plaintiff's testimony at the trial concerning how the injuries for which he makes claim were sustained was as follows.

On December 19, 1961, he was engaged in carrying supplies for storage from the first floor to the second. He picked up a 100 pound cardboard box, put it on his left shoulder and carried it up the stairs to the second floor. At the top of the stairs was a landing and a door leading into a ladies' locker room where the boxes were to be stored. At the top of the door was a closing device which caused the door to close after it had been opened.

Plaintiff testified he opened the door with his right hand far enough so that he could get his left foot ahead of the door and kick the door back. He stated, "When I kicked the door back, I didn't get through fast enough. The door struck the box, almost knocked me to the floor, it was with such force." He felt a sharp tearing-like pain in his left shoulder and put the box on the floor after taking two or three steps. He stood, rubbed his arm a few seconds, reached down and tried to lift the box. He lifted it two or three inches off the floor and then dropped it because of the pain.

He testified he reported the accident to Andrew Machtemes, his gang foreman. He said that for about fifteen to twenty weeks before the date of this injury the door had been slamming and he had reported its condition four or five times to Joseph Walsh, assistant general foreman, and Raymond Preski, general foreman.

The primary issues to be decided on this appeal are whether the district court abused its discretion in denying defendant's motion for new trial on the grounds that the $125,000 verdict was grossly excessive and that there was not substantial evidence to support the jury's finding, by its general verdict, that plaintiff's injury was caused by the slamming door.

## I

As a result of plaintiff's injuries he did not work from January 31, 1962 to August 20, 1962. During this period plaintiff was hospitalized on four different occasions for a total of fifty-three days. He received various treatments and medications and on June 4, 1962 an operation was performed which removed ⅝ths of an inch of the distal end of his collar bone.

Both parties agree that plaintiff's loss of earnings for this period was $2467.80 and his hospital and doctor expenses totaled $1088.15.

Plaintiff was given a back-to-work examination on August 16, 1962 and two doctors wrote letters stating he could return to work. He returned on August 21 and worked for ten months until June 21, 1963. On this date, he fell from a stepladder while washing windows in the course of his employment and injured his back. Plaintiff is not seeking to recover damages from defendant for this second injury.

On July 29, 1963, plaintiff presented himself to Dr. Hamilton for a back-to-work examination. Dr. Hamilton sent him to Dr. Davia who reported that plaintiff should be disqualified from working because of a limitation of motion and pain in his shoulder and the fact he was wearing a back brace. Dr. Hamilton concurred in the disqualification. He testified this examination disclosed the range of motion in plaintiff's arm to be between fifteen to thirty degrees of abduction, which was a marked decrease from that shown in plaintiff's back-to-work examination of August 16, 1962.

The principal point of disagreement between plaintiff and defendant on the issue of damages is whether plaintiff should be compensated for future loss of earnings. Plaintiff states that $71,292 of the $125,000 jury verdict represents plaintiff's future loss of earnings.[1]

---

1. This amount was said to be based upon a working expectancy of fifteen years to age sixty-five and plaintiff's last weekly salary of $91.40.

Defendant contends that, "as a matter of law, the second accident was an intervening cause; that there is no evidence that the second accident was caused, in whole or in part, from the first; that as a matter of law it is not liable for the damages therefrom, particularly loss of future wages, the undisputed evidence being that it was the second accident that rendered plaintiff—at the time of the back-to-work examination—no longer employable as a janitor."

Plaintiff cannot recover damages which are not proximately caused by defendant's alleged negligence. E.g., S. S. Kresge Co. v. Kenney, 66 App.D.C. 274, 86 F.2d 651 (1936). Plaintiff makes no claim that his fall from the stepladder and resulting back injuries were caused by any negligence of defendant. Plaintiff's position is that the doctors' disqualifications after his back-to-work examination were based upon his first injury.

Dr. Hamilton testified plaintiff was disqualified from work because of the findings by Dr. Davia that plaintiff "had a limitation of motion in his shoulder, and he was complaining about pain in his shoulder and * * * he was wearing a support to his back."

Dr. Davia's report to the United States Railroad Retirement Board stated, *inter alia:*

"2. Present Disabling Condition: Marked limitation of motion of left arm at shoulder, symptomatic osteoarthritis of lumbar spine.

"3. Objective Findings: * * * Information is especially needed about: Wearing lumbrosacral corset with metal stays. Motion almost completely restricted of left arm at shoulder. Tenderness and surgical scar over left acromioclavicular joint area. Had distal end of the clavicle removed.

"6. Recovery Date: Give approximate date on which you believe claimant will be able to work (a) In his last occupation: Probably may never be able to return because of emotional problems or (b) other type of work: May be able to do light sedentary work where use of left arm is not fully required anytime."

■ In view of these findings and report and the fact that plaintiff worked continuously for ten months after his shoulder injury and immediately prior to his back injury, we hold that no reasonable juror would find that plaintiff's disability from work was solely attributable to his shoulder injury.

■ Plaintiff has the burden of proving what proportion, if any, of the alleged loss of future earnings was caused by the shoulder injury. See Prosser, Law of Torts, § 45, p. 229 (2d ed. 1955). No such proof was tendered.

As stated, supra, both parties agree that plaintiff's loss of earnings for the period of time he was unable to work due to his shoulder injury and his doctor and hospital expenses for this injury totaled $3555.95. Subtracting this figure from the jury verdict leaves $121,444.05 attributable to pain and suffering, possible reduction of earning power and possible loss of future earnings. In the absence of proof concerning loss of future earnings attributable to the shoulder injury, most of this amount would have to be designated as damages for pain and suffering. We hold this amount to be grossly excessive. See Thomas v. United States of America, 7 Cir., 327 F.2d 379, fn. 7 (1964) and Goertz v. Chicago & N. W. Ry. Co., 19 Ill.App.2d 261, 274–277, 153 N.E.2d 486, 494 (1958).

II

Defendant's second contention is that a new trial is required because the evidence overwhelmingly demonstrates plaintiff's shoulder injury was caused by his lifting a carton or box from the floor and not by the alleged defective door. Plaintiff's testimony as to how the accident occurred was set out previously. In addition to plaintiff's testimony, evidence concerning the cause of the shoulder injury is as follows.

Plaintiff testified he had reported to the general foreman and assistant gen-

'eral foreman of defendant, four or five times prior to his shoulder injury, that the door was defective. This was denied at the trial by both foremen.

Machtemes, a gang foreman, was called as a witness for plaintiff. He testified that on the day of plaintiff's injury plaintiff reported the accident to him and he filled out an accident report. Machtemes testified on cross-examination as follows:

"Q. Mr. Machtemes, what did Mr. Shupe tell you happened on the morning of December 19, 1961?

"A. He said he was up in the file room stacking cartons and that he picked one up from the floor, and as he turned to put it on the shelf, he felt the pain in his shoulder.

"Q. Did he at any time mention to you a door striking him?

"A. No, sir."

The accident report, which was introduced into evidence by plaintiff, stated, "Cause of accident as claimed: While stacking cartons of office material in file room and lifting a carton from floor felt a sudden pain in left shoulder."

Subsequent to the accident, plaintiff was treated for his shoulder injury by Dr. Garrick and Dr. Hamilton. He was admitted to St. Joseph's Hospital and St. Luke's Presbyterian Hospital for treatment. Plaintiff testified on cross-examination he told the doctors and personnel at the hospital about the door. Dr. Garrick testified there was nothing in the history taken from plaintiff concerning plaintiff's shoulder about being struck by a door. Dr. Hamilton testified that when he X-rayed plaintiff, plaintiff did not mention being struck by a door. The hospital records of plaintiff's history concerning the shoulder injury do not mention the door.

Dr. Garrick made out a "Surgeon's Report of Personal Injury" on plaintiff which was introduced into evidence by plaintiff. This report contained the following, *inter alia:* "1. Show cause of accident as stated by injured person— Felt pain and 'catch' in left shoulder

while lifting 100# crate, and stacking crates in piles."

Dr. Hamilton testified plaintiff told him he injured his shoulder as follows: "He [plaintiff] also informed me that it was part of his duty to carry supplies from a down-stairs storage area up to the first floor, I believe, and he had to walk up some stairs, and he had felt pain in his shoulder occasionally, but he said on one particular occasion when he was lifting a box he had a little more pain in his shoulder than he had previously."

St. Joseph's Hospital report from Dr. Vanderbosch, on plaintiff's third admission, states under the title "History from patient," that plaintiff " * * * has excruciating pain in left shoulder since last December when he carried some boxes and 'strained' himself."

On June 7, 1962, an investigator employed by defendant wrote down the following statement allegedly told to him by plaintiff:

"On 12–19–61, while working for New York Central, carrying boxes of stationary, time cards, etc., from the main floor to the second floor of the main office bldg. at 33 West Root Street, Chicago, I injured my left shoulder. This injury occurred after carrying these boxes for about two hours. These boxes, some weighing more than 100 lbs., were carried on my left shoulder up two flights of stairs through a swinging door. My shoulder became sore gradually, like anyone's would, and finally after one trip I fell to my knees & dropped the box that I was carrying & experienced a severe pain, a sharp pain in my left shoulder. * * * I don't know if I trip or if the swing door knocked me down. * * *"

This statement was admitted into evidence. On cross-examination, plaintiff denied making the statement but testified the signature on it looked like his.

On August 16, 1962, the claim agent for defendant, accompanied by Bernard

Lake, a court reporter, questioned plaintiff. Lake wrote down the questions asked by the agent and answers given by plaintiff. At the trial, he was called as a witness by defendant and read from his notes taken that day. He testified plaintiff was asked if he was injured while at work and he answered, "Yes, in moving cards, boxes, and things from the first floor of the building up on the second floor, stacking them, and I injured the bone on top of my left shoulder." When asked how many boxes he had carried he said, "Approximately twenty of them, carrying them all morning. I got the last box up there, and started to stack it up. I stacked them about, I imagine, about 4 or 5 foot high, caught a pain in my left shoulder." He was asked whether any particular box caused this pain or if it was the result of an accumulation of the work. He answered, "It must have been just the accumulation. I wouldn't say now, but I didn't get the sharp pain or nothing until I went to stack them up there, and I started to get one of those heavy boxes." On cross-examination, plaintiff denied being asked these questions and giving the answers.

Lake further testified plaintiff, was asked whether he fell down when he injured his shoulder. He said plaintiff answered, "No. But I got hit a few times going through those swinging doors with those boxes, and I had about twenty boxes, I guess, together to stack up some of them small ones, and some of them real heavy. And they had the real heavy swinging door, I don't know whether you were over there or not, but if you don't watch yourself, they knock you back the other way when they open."

On December 11, 1962, plaintiff applied for health and accident insurance with Continental Insurance Company. The application asked, *inter alia*, "Have you ever made claim for or received indemnity on account of any injury or illness? * * *" The answer on the application was, "Yes Travel Ins. Co. bursitis (1962) Recovered—Good Health Now." Plaintiff, on cross-examination, stated that the signature on the application was not his.

When asked a second time whether he wrote the signature he replied, "I don't think so. I don't think I wrote that. It looks like my signature, but it don't correspond."

In sum, the record of the trial indicates there have been numerous instances where plaintiff has denied making a statement attributed to him and that his written name was his signature. The evidence, with the exception of plaintiff's testimony and statements allegedly made by plaintiff to others which referred to the door, indicates plaintiff's shoulder injury was not caused by the alleged defective door.

We do not hold as a matter of law that plaintiff's injury was not caused by the swinging door. However, plaintiff's claim at trial that he was injured by a defective door closer is so grossly at variance with that of the numerous persons with whom he came in contact after the alleged accident, we are left with a grave doubt as to the truthfulness and reasonableness of his trial testimony. We are fully cognizant of the limitations imposed on this court in determining matters of credibility on appeal. But, in reviewing the record as a whole, we are left with the firm conviction there was a miscarriage of justice in this case.

██ A jury may not properly return a capricious and arbitrary verdict in total disregard of the evidence. Under the circumstances of this case, giving regard to the gross excessiveness of the verdict, combined with close or doubtful liability, we are compelled to hold that the verdict rendered was arbitrary and capricious and must be set aside. Wetherbee v. Elgin, Joliet & Eastern Ry. Co., 7 Cir., 191 F.2d 302, 310 (1951).

██ While it is generally true that granting or denying a motion for new trial lies within the sound discretion of the trial court and ordinarily is not subject to review, we find this to be one of those exceptional cases which call for a reversal. Bucher v. Krause, 7 Cir., 200 F.2d 576, 586 (1953), cert. denied, 345 U.S. 997, 73 S.Ct. 1141, 97 L.Ed. 1404;

Charles v. Norfolk & Western Ry. Co., 7 Cir., 188 F.2d 691, 695 (1951).

This being an exceptional case, our holding is limited to the facts and circumstances we find decisive here.

We do not reach other claims of error raised by defendant in this appeal.

In light of our views hereinabove expressed, we hold that in the interest of justice a new trial is required. The judgment appealed from is reversed and this cause is remanded to this district court for a new trial.

Reversed and remanded.