Charles RIGGS, Plaintiff-Appellant,

v.

The PENN CENTRAL RAILROAD COMPANY, Defendant-Appellee.

No. 18769.

United States Court of Appeals, Seventh Circuit.

April 30, 1971.

Rehearing Denied June 3, 1971.

Richard W. Huszagh, Herbert D. Jones, Jr., Chicago, Ill., for plaintiff-appellant.

Calvin K. Hubbell, Chicago, Ill., for defendant-appellee.

Before SWYGERT, Chief Judge, CASTLE, Senior Circuit Judge, and KERNER, Circuit Judge.

CASTLE, Senior Circuit Judge.

Charles Riggs, plaintiff-appellant, brought this Federal Employers' Liability Act action to recover damages for personal injuries allegedly sustained as a result of the negligence of the defendant-appellee railroad [1] in failing to provide him with a reasonably safe place in which to do his work. The cause was tried to a jury. The defendant railroad made a motion for a directed verdict at the close of the plaintiff's case, which motion was denied by the District Court. The defendant made another motion for a directed verdict at the close of all the evidence. The court reserved its ruling on this motion. The jury returned a verdict for the plaintiff in the amount of $33,750.00. After verdict, the defendant moved for a ruling on its motion for a directed verdict. The court granted the motion for a directed verdict and entered judgment dismissing the plaintiff's action. Plaintiff appealed.

The rule is well established that defendant's motion presents only a question of law as to whether, when all the evidence is considered together with all reasonable inferences most favorable to plaintiff, there is a total failure or lack of evidence to prove any necessary element of plaintiff's case. O'Day v. Chicago River & Indiana Railroad Company, 7 Cir., 216 F.2d 79, 82. And the Federal Employers' Liability Act, 45 U.S.C. A. §§ 51–60, imposes liability for injury which results in whole or in part from the railroad's negligence. Under the statute the test of a jury case is simply whether the proofs justify within reason a conclusion that employer negligence played any part, even the slightest, in producing the injury for which damages are sought. The evidence need only be enough to justify a jury's determination that employer negligence had played any role in producing the harm. Harris v. Chesapeake and Ohio Railway Company, 7 Cir., 358 F.2d 11, 12.

The record discloses that on July 15, 1966, the plaintiff was working for the defendant railroad as a passenger train helper-conductor. At 3:00 p. m. on that date he boarded defendant's passenger train at the LaSalle Street Station, Chicago, Illinois. He went to the two front coaches where he was to assist passengers in boarding those coaches. He opened the doors between the two coaches, obtained a metal stepping box, and got off. At the point on defendant's platform where the passengers were to board the two coaches there was a cross-over track and the black-top surface of the platform was broken up. An area about three feet wide and four feet long had been filled in with ballast. This condition of the platform had existed for six months to a year.

With respect to the circumstances of the alleged injury, the plaintiff testified that it was necessary to place the stepping box in the ballast; that he stood next to the box, which was in front of

---

1. At the time of the alleged injury the plaintiff was an employee of the New York Central Railroad Company which subsequently merged with the Pennsylvania Railroad Co. to form The Penn Central Railroad Company.

him, with his right foot positioned on the ballast, and proceeded to assist a special party of sixty-seven women to board the train; that he took the baggage from each woman and shoved it up onto the vestibule of the coach and then helped her on; that when about half of the women had boarded, the plaintiff's right foot turned in the ballast, which was loose, while he was handling a bag; that he felt a snap and pain in his hip, paused momentarily but then continued with the loading.

Plaintiff further testified that he told the head conductor on the train that he hurt his hip; and that when he left the train at Elkhart, Indiana, on completion of his tour of duty, he made out an accident report and gave it to the agent.

Plaintiff's testimony concerning the condition of defendant's platform in the area of the cross-over track, and the length of time the condition had existed, was corroborated by other testimony and evidence. Thus there was evidence from which the jury could properly conclude that the defendant was negligent in failing to maintain its platform in a condition to afford plaintiff a safe place to do his work.

■ The record discloses a conflict in the medical testimony with respect to whether the aseptic necrosis of the femoral head of both hips with which plaintiff was subsequently found to be afflicted [2] was or could have been caused by the occurrence of July 15, 1966, related by plaintiff. But the resolution of such conflict, of course, was solely a matter for the jury.

■ The defendant contends, however, that there is no competent evidence which justifies within reason a conclusion that there is any causal relationship between plaintiff's affliction with aseptic necrosis and any defect in defendant's platform. In this connection the de-

fendant argues that plaintiff's trial testimony that his right foot "turned" in the loose ballast while he was loading a passenger's bag is so devoid of substance and so grossly at variance with both a statement he signed a few months after the alleged occurrence and his pre-trial deposition testimony that there is an utter lack of any competent evidence to show that plaintiff sustained any injury on July 15, 1966, or that the railroad was guilty of any negligence which in whole or in part resulted in injury to the plaintiff.

Defendant on cross-examination of the plaintiff brought out that in a signed statement plaintiff gave to the railroad's claim agent on February 20, 1967,[3] he stated, with reference to the July 15, 1966 occurrence, that he "did not slip, trip, nor fall" and that "[m]y foot did not slip nor twist in the ballast when I was injured". Likewise, plaintiff admitted on cross-examination that in a pre-trial deposition taken July 31, 1969, he gave answers, in response to questions concerning the incident, that his foot did not "slip", "slide", nor "twist in the ballast". When asked if he was mistaken in his earlier statement and in his deposition testimony or in his trial testimony, the plaintiff explained that "[w]ell, I don't think it slipped, but I think it turned, the right foot".

While it is possible to use the word "turned" with reference to movement of the foot in a sense in which it is not synonymous with "twist", we are of the view that in the context of this record the inconsistency between both plaintiff's pre-trial statement and deposition and his testimony at the trial that the ballast moved and his right foot turned would have justified the jury in rejecting his testimony with respect to the occurrence. As the defendant points out, the inconsistency gives rise to grave doubt as to the truthfulness of plaintiff's trial

---

2. The record discloses that this condition required surgery performed on plaintiff, first to replace the head of the right femur with a metal ball prothesis, and later an osteotomy on the left femur and the insertion of a metal pin and the affixing of a metal plate.

3. The signed statement had earlier been introduced in evidence by plaintiff.

testimony. And the existence of the element of causal relationship between plaintiff's condition of ill-being and any negligence on the part of the defendant rests solely on the plaintiff's uncorroborated testimony on the witness stand that his foot turned in the loose ballast.

■■ But it is for the jury to determine the effect of inconsistent or conflicting statements upon the credibility of the witness. Jones on Evidence, 5th Ed. § 938. And, if in fact one statement is contradictory of another, it is within the province of the jury to determine which is deserving of credit. Jones, supra, § 993. Prior inconsistent statements do not affect the competency of the testimony of the witness or render his testimony nugatory. In this connection see Guthrie v. Van Hyfte, 36 Ill.2d 252, 222 N.E.2d 492, in which it was held improper to enter a judgment for defendant notwithstanding the verdict of the jury awarding plaintiff damages for injuries allegedly caused by the misconduct of the defendant in the operation of plaintiff's automobile. Plaintiff's testimony at the trial that the defendant was driving at the time the injury occurred was impeached by his prior post-accident statements to others in which the plaintiff said he had been driving at the time of the accident. But the Court pointed out (36 Ill.2d 252, 258, 222 N.E.2d 492, 495):

"The fact that a witness, be he a party or otherwise, has made out-of-court statements inconsistent with his sworn testimony does not *per se* destroy the probative value of his testimony, and it ordinarily remains for the trier of fact to determine where the truth lies (58 Am.Jur., Witnesses, 863; Chicago City Railway Co. v. Ryan, 225 Ill. 287, 289, 80 N.E. 116; Matthews v. Granger, 196 Ill. 164, 171, 63 N.E. 658.) Defendant argues that the contradictory statements here were those of plaintiff, himself, and cites numerous law review articles, text-writers and decisions to the effect that such statements constitute substantive evidence against him of the facts stated. Such

is, of course, the rule, and proof of such statements was here admitted. It then became the duty of the trier of fact—the jury—to evaluate the sworn testimony, the prior inconsistent statements and the explanations thereof, giving to the various witnesses such credence as the jurors determined proper. (People v. Church, 366 Ill. 149, 7 N.E.2d 894; People v. Pursley, 302 Ill. 62, 134 N.E. 128; Beedle v. People, 204 Ill. 197, 68 N.E. 434) Therefore, direction of a verdict for defendant would not have been proper, and the appellate court erred in so holding."

Defendant's reliance on Shupe v. New York Central System, 7 Cir., 339 F.2d 998, is misplaced. In *Shupe*, where a second intervening injury for which plaintiff did not seek recovery from the defendant railroad was a contributory, if not the primary, cause of the claimed loss of future earnings, this Court held that the $125,000 verdict of the jury, of which amount $71,292 admittedly represented the damages claimed for future loss of earnings, was grossly excessive. We concluded (339 F.2d 998, 1002) that:

"Under the circumstances of this case, giving regard to the gross excessiveness of the verdict, combined with the close or doubtful liability, we are compelled to hold that the verdict rendered was arbitrary and capricious and must be set aside."

While our reference to "close or doubtful liability" was based in part on testimony and evidence of plaintiff's prior statements with respect to the manner in which he sustained the alleged shoulder injury for which he sued, which statements were at variance with his trial testimony, and we observed that we were "left with a grave doubt as to the truthfulness and reasonableness of his [plaintiff's] trial testimony", the credibility factor so posed was not advanced as an independent alternative ground for our holding. We expressly recognized "the limitations imposed on this court in determining matters of credibility on appeal". And, we cautioned, "[t]his being

109

an exceptional case, our holding is limited to the facts and circumstances we find decisive here". Thus *Shupe* does not support the railroad's contention in this case.

We conclude that the District Court erred in its ruling granting the defendant's motion for a directed verdict and in entering the judgment dismissing plaintiff's action. We therefore reverse the judgment order of the District Court and remand the cause to that court with directions to reinstate the verdict of the jury and to enter judgment for the plaintiff accordingly.

Reversed and remanded with directions.