Margo MICHAELIS, Plaintiff,

v.

POLK BROS., INC., Defendants.

No. 79 C 3787.

United States District Court,
N. D. Illinois, E. D.

June 25, 1982.

Nicholas Dozoryst, Chicago, Ill., for plaintiff.

John L. Snyder, Hopkins, Sutter, Mulroy, Davis & Cromartie, Chicago, Ill., for defendants.

## MEMORANDUM

LEIGHTON, District Judge.

### I

### Introduction

This is an age and sex discrimination action by Margo Michaelis, a woman who was born in 1922, against her former employer, Polk Bros., Inc., a family-owned corporation consisting of a chain of retail stores in the Chicago area which sell furniture and appliances. Michaelis filed a three-count complaint against Polk on September 12, 1979: Count One alleged a Title VII claim pursuant to 42 U.S.C. § 2000e *et seq.*; Count Two alleged a claim under the Age Discrimination in Employment Act, 29 U.S.C. § 623 *et seq.*; and Count Three purported to state a claim for breach of contract under Illinois common law. By memorandum opinion dated March 16, 1982, this court granted Polk's motion for summary judgment as to Count Three on the ground that the claim was barred by the Illinois Statute of Frauds, and denied its motion for summary judgment as to Counts One and Two.

On March 22, 1982, this court began a bench trial of the sex discrimination claim in Count One. A jury was impaneled simultaneously to hear evidence on Count Two, plaintiff's age discrimination claim. On March 29, the jury returned a verdict for plaintiff on her age discrimination claim, and against defendant. Several post-trial matters are now before the court. They are the motion of Polk Bros., Inc. under Rule 50(b), Fed.R.Civ.P. for judgment notwithstanding the verdict [hereinafter judgment n. o. v.], or in the alternative, a motion for a new trial pursuant to Rule 59, Fed.R.Civ.P. as to the age discrimination claim. And, this court must also make findings of fact and conclusions of law as to the evidence it heard while conducting the simultaneous bench trial on plaintiff's sex discrimination claim.

For the reasons set forth below, and in the following order, the court denies Polk's motion for entry of judgment n. o. v. as to Count Two, and grants Polk's alternative motion for a new trial. Finally, in accordance with the findings of facts and conclusions of law made as to plaintiff's sex discrimination claim in Count I, the court enters judgment thereon in favor of defendant Polk, and against plaintiff.

### II

### Polk Brothers' Motion for Judgment N.O.V.

The undisputed evidence presented at trial shows that plaintiff's job, that of assistant to the merchandising manager, was eliminated by defendant on February 27, 1979. Defendant had employed the plaintiff since March 25, 1955, and she was 56 years old at the time she was discharged.

At the time, the number of non-clerical positions in the furniture merchandising department was reduced by one. Before elimination of her position, the following positions existed in her department in addition to plaintiff's: merchandising manager, and two reorder buyers.

In order to establish her claim for relief under the Age Discrimination in Employment Act, plaintiff was required to prove the following at trial:

> (1) She was between the ages of 40 and 70; (2) her job was eliminated; (3) she was performing her job competently at the time it was eliminated; and (4) a fact or facts from which it could reasonably be concluded by the jury that but for defendant's motive to discriminate against plaintiff because of her age, her position would not have been eliminated.

*Kephart v. Institute of Gas Technology*, 630 F.2d 1217 (7th Cir. 1980), *cert. den.*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). Plaintiff and defendant agree that her age placed her within the purview of the class protected by the Age Discrimination in Employment Act, and they also agree that her position was eliminated on February 27, 1979. However, there is disagreement as to the caliber of plaintiff's job performance, as well as whether or not plaintiff established facts at trial sufficient to support her claim that her age was the determining factor in abolishing the position she held with Polk.

A motion for judgment n. o. v. raises a question of law. *Appleman v. United States*, 338 F.2d 729, 730 (7th Cir. 1964), *cert. den.*, 380 U.S. 956, 85 S.Ct. 1090, 13 L.Ed.2d 972 (1965). The standard for determining whether a judgment n. o. v. should be entered is:

> Whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is insufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed.

*Syvock v. Milwaukee Boiler Mfg. Co., Inc.*, 665 F.2d 149, 153 (7th Cir. 1981); *Appleman v. United States*, 338 F.2d at 730 (7th Cir. 1964), *cert. den.*, 380 U.S. 956, 85 S.Ct. 1090, 13 L.Ed.2d 972 (1965). Permissible inferences must be drawn in favor of the party opposing the motion for judgment n. o. v., as must any conflicts in the evidence. *Id., Syvock v. Milwaukee Boiler Mfg. Co., Inc.*, 665 F.2d at 153 (7th Cir. 1981); *Wisconsin Liquor Co. v. Park & Tilford Distillers Corp.*, 267 F.2d 928, 930 n.1 (7th Cir. 1959).

As is evident from the foregoing, the standards for granting such a motion are stringent; *Syvock v. Milwaukee Boiler Mfg. Co., Inc.*, 665 F.2d at 153–54 (7th Cir. 1981); the Seventh Circuit has admonished that courts should enter judgments n. o. v. sparingly. *Clemons v. Mitsui O. S. K. Lines, Ltd.*, 596 F.2d 746, 748 (7th Cir. 1979), *cert. denied*, 451 U.S. 969, 101 S.Ct. 2044, 68 L.Ed.2d 347 (1981). Indeed, it has been said that a motion for judgment n. o. v. should be denied when the evidence and reasonable inferences drawn therefrom, viewed in the light most favorable to the non-movant, is such that reasonable men in the fair and impartial exercise of their judgments, may reach different conclusions. *Id., Clemons v. Mitsui O. S. K. Lines, Ltd.*, 596 F.2d at 748; *Hohmann v. Packard Instrument Co., Inc.*, 471 F.2d 815, 819 (7th Cir. 1973).

Application of the standards set forth above requires this court to conclude that Polk's motion for judgment n. o. v. must be denied. First, plaintiff and defendant produced conflicting evidence at trial. Ernest Kaufer was plaintiff's supervisor for 17 years, and he testified that she had always performed capably, and that her position was at least equal to that of officially designated reorder buyers. Both he and plaintiff testified that plaintiff's duties overlapped those of a reorder buyer. Arthur Madonick, an outside sales representative, testified that plaintiff always performed her job competently, that she was well-informed, that to his knowledge, she acted in Polk's best interests, and that she was aware of the inventory needs of her lines. It is undisputed that plaintiff received incentive compensation in the form of "override", normally reserved for sales personnel and middle management. It is also undisputed that plaintiff received life

insurance in an amount usually given only to store managers.

Plaintiff also notes that she presented evidence indicating that over a 25-year period, all officially designated reorder buyers had been young persons, most of whom were much younger than 40 years of age. Finally, at the time she was terminated, the remaining individuals in plaintiff's office were two officially designated reorder buyers, both of whom were younger than plaintiff.

When all permissible inferences are drawn in plaintiff's favor, the reasonable conclusion to be arrived at is that the jury found that plaintiff was performing her duties competently, that she had long performed the duties of a reorder buyer, even though she held the title of assistant to the merchandising manager, that Polk Brothers had a 25-year history of hiring young individuals, invariably under 40 years of age, for the officially designated position of reorder buyer, that the two officially designated reorder buyers whose positions were not terminated were both younger than plaintiff, that she was as capable as they in performing the duties of a reorder buyer, and that age was the determining factor in elimination of plaintiff's position. Application of the standards set forth above requires this court to conclude that the motion of Polk Brothers for judgment n. o. v. must be denied.

### III

### Polk Brothers' Motion for New Trial

■ Because this court denied Polk Brothers' motion for judgment n. o. v., it must now address the defendant's alternative motion for new trial. The decision whether to grant or deny a motion for new trial is left to the sound discretion of the trial court; the standard is whether the jury's verdict is against the manifest weight of the evidence. *Durant v. Surety Homes*, 582 F.2d 1081, 1088 (7th Cir. 1978); *Shupe v. New York Central System*, 339 F.2d 998 (7th Cir.), *cert. den.*, 381 U.S. 937, 85 S.Ct. 1769, 14 L.Ed.2d 701 (1965).

■ The court concludes that the jury's verdict was against the manifest weight of the evidence. Uncontradicted evidence established the following. Polk hired plaintiff to work as a secretary for E. J. Kaufer, manager of the furniture merchandising department, in March, 1955. Shortly thereafter, Kaufer assigned her other tasks in addition to her duties as his secretary, and gave her the title of assistant to the merchandising manager. She worked for him until August, 1972, when he left Polk. During that period, they became close personal friends. Although Kaufer hired ten individuals as reorder buyers during his tenure there, he never promoted plaintiff to such a position. Kaufer was replaced in 1972 by Austin Goldberg, who then left Polk in December of that year. The position of furniture merchandising manager was not filled until April 30, 1973, when Norton Ascher was appointed. His term lasted from 1973 until March, 1980.

Kaufer, Goldberg, and Ascher were respectively charged with the responsibility of advertising, purchasing, and sales of furniture for the entire Polk chain of stores. They were assisted by two reorder buyers who selected furniture lines, reordered furniture inventory, set up floor displays in the stores, monitored sales, and acted as store managers when necessary. Plaintiff testified that between 1973 and 1975, she twice requested Ascher to promote her to reorder buyer, who refused to do so. Plaintiff was never authorized to purchase furniture for Polk, and she never traveled to any of the Polk stores to exercise supervisory authority over the furniture sales departments. Furthermore, reorder buyers worked six days per week; plaintiff worked five days per week. Reorder buyers drove their own automobiles to Polk Brothers stores to check merchandise and act as substitute managers; plaintiff did not drive an automobile. Reorder buyers participated in semi-annual warehouse sales and regular store sales; plaintiff had not done so for at least five years. There was no evidence that any position in the merchandising department other than plaintiff's could have been eliminated.

It is also undisputed that between 1973 and 1979, Ascher modified substantially the record-keeping formats in the furniture merchandising department, and that plaintiff failed to adapt to those changes. Specifically, Ascher increased the department's reliance on computer printouts for data concerning furniture inventory. Plaintiff admitted that she instead counted the computer cards themselves, rather than relying on the print-outs derived from information on the computer cards. Over 50% of her time on the job was devoted to this self-imposed task. Moreover, one of the reorder buyers developed a form to reduce the number of records used to monitor inventory; plaintiff refused to use the form.

Plaintiff was transferred in February, 1979 to the credit department for a period of about two weeks because there was no longer any work for her in the furniture merchandising department. Managers of other departments were asked whether they could use plaintiff's services, but there were no vacancies. As of February 27, 1979, there were no vacancies for reorder buyer in the furniture merchandising department.

After plaintiff completed the work at the credit department, Ascher told her he had no more work for her, and that she should speak to Lester Bachmann, executive vice-president. She did, and he offered her a major-appliance sales position at the Belmont Avenue Polk store, approximately one mile from her home. All full-time major appliance sales persons at Polk's Belmont Avenue store were earning more money than plaintiff; moreover, some of them were earning more money than both reorder buyers. Plaintiff inquired whether she would be a manager there, and Bachmann replied that she would not become one immediately, but that she would have the opportunity to do so. She then told him that she would think about his offer. Nevertheless, after plaintiff visited the store, she decided to reject the offer.

The substantial weight of this evidence is that Polk eliminated plaintiff's position because it had developed a computer-controlled inventory system which eliminated the need for plaintiff to count cards. The evidence also established that Polk Brothers made all efforts to find plaintiff another position with the company, and offered her other employment which gave her the potential to earn more money than she had made at a location closer to her home. No evidence was presented which would tend to show that defendant adopted a computer controlled inventory system for the purpose of discharging her; nor was there any evidence that the system was adopted in order to discriminate against her on the basis of her age. Finally, the evidence established that plaintiff left the employ of Polk Brothers, not because of defendant's alleged discrimination, but because plaintiff refused to adapt to changes in work or in position at Polk Brothers.

At best, plaintiff's theory of age discrimination appears to have been that she was entitled to remain in the position of assistant to the merchandising manager until her retirement. In the exercise of sound discretion, this court concludes that the jury's verdict in favor of plaintiff as to her age discrimination claim was against the manifest weight of the evidence. *Durant v. Surety Homes*, 582 F.2d 1081, 1088 (7th Cir. 1978); *Shupe v. New York Central System*, 339 F.2d 998 (7th Cir.), *cert. den.*, 381 U.S. 937, 85 S.Ct. 1769, 14 L.Ed.2d 701 (1965). Accordingly, Polk Brothers' motion for a new trial as to plaintiff's age discrimination count is granted.

## IV

### Findings and Conclusions With Respect to the Sex Discrimination Claim

#### A. Findings of Fact

This action was filed by plaintiff, Margo Michaelis, on September 12, 1979. A bench trial on plaintiff's sex discrimination claim alleged in Count One of her amended complaint was conducted March 22 through March 29, 1982, and the court makes the following findings of fact from the evidence presented thereby.

1. Michaelis was born in Germany on June 14, 1922; she has lived in Chicago,

Illinois since her immigration to the United States in 1937. Although she attended some high school and evening college courses, plaintiff has neither a high school nor college degree.

2. Defendant, Polk Bros., Inc., is an Illinois corporation with its headquarters in Melrose Park, Illinois. Polk Brothers is engaged in the retail sale of furniture, appliances, and other consumer durables. Polk has currently 13 retail stores in the metropolitan Chicago area.

3. Michaelis began working for Polk Brothers, Inc., on March 25, 1955, and remained a full-time employee there until February 27, 1979. Prior to working for Polk Brothers, plaintiff worked for three years at M.P. Masser Furniture Company.

4. Michaelis was employed in the furniture merchandising department of Polk Brothers during her tenure with defendant, with one exception. That exception was a one or two week period just before the termination of her position, when she worked in the credit department.

5. Plaintiff's position was known as assistant to the merchandising manager, and she worked under three managers during her tenure with defendant: Earnest Kaufer, from March 1955 through August 1972; Austin Goldberg from August 1972 through December 1972; Norton Ascher from April 1973 through February 1979. Plaintiff also worked under the direction of Goldie Bachmann from March 1955 until some time in 1974.

6. At all times relevant herein, two other positions existed in the furniture merchandising department, commonly referred to as "reorder buyer." Michaelis assisted the reorder buyers as well as the merchandise manager with clerical tasks. The furniture merchandising department also had three clerical employees.

7. Throughout the period of plaintiff's employment with Polk Brothers, only men served in the position of reorder buyer. From March 1955 until January 1972, ten persons served as reorder buyers, all of whom were male. Plaintiff conceded at trial that Polk did not discriminate against her on the basis of her sex during that period.

8. The last two men to hold the position of reorder buyer prior to plaintiff's termination in 1979 were Richard Luckman, hired November 1974, and Howard Frank, hired October 1975. Norton Ascher was the merchandising department manager during those periods.

9. The furniture merchandising department has the responsibility of purchasing furniture for retail sale at Polk stores. The department transfers merchandise to the retail stores, and is responsible for displays, inventory maintenance, and general assistance to retail store employees.

10. Plaintiff's responsibilities as assistant to the furniture merchandise manager included: coordination of communications to retail stores; collection, organization and dissemination of price and promotional information; preparation of advertising materials; providing assistance to sales representatives and to retail stores.

11. As part of her compensation, Michaelis received an override, which constituted a percentage of gross sales of selected lines of furniture. This form of compensation was usually provided only to managers and supervisors.

12. Mr. Kaufer testified that Michaelis held a job of equal or greater importance to the furniture merchandising department than that of reorder buyer. He observed no deterioration in the amount or quality of her work during his tenure as furniture merchandising manager.

13. In late 1972 or early 1973, shortly after Austin Goldberg became merchandising manager, Michaelis approached Goldie Bachmann, at that time an officer and director of Polk Brothers with overall responsibility for the furniture department, concerning her chances of being promoted to the position of reorder buyer. Ms. Bachmann was incapacitated at the time of trial as the result of a stroke.

14. Michaelis testified that she told Ms. Bachmann that although she was only a

secretary, she could do the job of reorder buyer as well as the men, and that Ms. Bachmann responded that Michaelis was needed where she was. There was no evidence that a position of reorder buyer was open at the time Michaelis approached Ms. Bachmann.

15. On three subsequent occasions, Michaelis requested Norton Ascher to promote her to the position of reorder buyer. The first time she made such a request, Michaelis told Ascher that the two men were being treated as big shot buyers and that she wanted some of the glory. Ascher told her that he needed her where she was.

16. The second and third time Michaelis made these requests, a vacancy for such a position existed, and both times Ascher responded that she could not have the position because she was needed where she was.

17. Michaelis testified that on the second or third such occasion, Ascher responded to her request by stating, "No, you can't do the job a man is doing." Ascher denied ever making this statement.

18. Ascher selected Richard Luckman to fill the 1974 reorder buyer vacancy. Luckman had worked for Wickes Furniture Company, a national furniture retailer, where he had been a sales and display manager, supervising approximately 30 people. While employed by Wickes, Luckman had also served as a merchandise manager for a department store branch where he was responsible for purchasing the store's entire inventory. Before working at Wickes, Luckman had been employed as an assistant store manager for Bruno's Furniture Company in Chicago.

19. Ascher hired Howard Frank to fill the 1975 reorder buyer vacancy. Frank's credentials included a Bachelor of Arts degree in Fine Arts, specializing in furniture architecture and design, and extensive experience as a furniture manufacturer's representative, as a designer of office interiors, and in the retail home furnishings business.

20. Michaelis testified that beginning in 1973, Ascher relieved her of numerous duties and responsibilities and delegated them to the two reorder buyers. Specifically, Michaelis testified that Ascher no longer permitted her to prepare news bulletins for distribution to the retail outlets or assist in preparing Polk's furniture advertisements.

21. Plaintiff testified that by 1978, she was left only with the jobs of monitoring inventory by counting computer cards which had been fed to the computer, making appointments occasionally for sales representatives to see the manager or the reorder buyers, and discharging some responsibilities with respect to what she termed her categories of furniture.

22. Norton Ascher and Howard Frank denied that plaintiff ever had responsibility for purchasing, stocking or maintaining inventory any items she characterized as her categories.

23. No evidence was presented that Michaelis ever complained to anyone during this time that Polk Brothers was discriminating against her on the basis of her sex.

24. Norton Ascher changed many procedures within the furniture merchandising department in an effort to promote efficiency. These changes included increasing his department's reliance on computer printouts summarizing furniture inventory. Michaelis preferred to count the computer cards and compare them with the computer printouts, rather than rely on the printouts themselves.

25. Howard Frank developed a new form to reduce the number of records relied on by the merchandising department. Michaelis refused to use the new form.

26. In February, 1979, Michaelis was transferred to the credit department for a period of one or two weeks because there was no work for her in the furniture merchandising department. After she had completed the work available there, Norton Ascher told her on February 27, 1979 that he had no other work for her to do, and that she should speak to Lester Bachmann, Polk's executive vice-president, about obtaining another position with Polk Brothers. As of that date, there were no vacancies for the position of reorder buyer in the furniture merchandising department.

27. No one notified Michaelis prior to February 27, 1982 that her position was to be eliminated.

28. Michaelis spoke with Lester Bachmann on February 27, 1979, and he offered her a position at Polk Brothers Belmont Avenue store, which was located approximately one mile from her home. Michaelis asked him whether she would be made a manager, and he said that she would have the opportunity to become one. Compensation was not discussed at this meeting.

29. Michaelis had never been employed as a full time sales person.

30. Michaelis stipulated at trial that all full time sales people at the Belmont store who sold the merchandise that she would have sold had she accepted the job earned more money than Michaelis had earned in the furniture merchandising department.

31. Plaintiff visited the Belmont store and decided to reject Mr. Bachmann's offer of a position there.

32. There was no evidence that Michaelis was better qualified than Luckman or Frank to fill the position of reorder buyer, or that either Luckman or Frank were unqualified.

33. There was no evidence that Polk Brothers' adoption of computer-assisted record-keeping was in any way motivated by a desire to discriminate against Michaelis on the basis of her sex.

34. The parties stipulated at trial as to the total compensation, including salary and override, awarded to Luckman, Frank and Michaelis:

### Luckman

| Year | Total Compensation |
| --- | --- |
| 1974 (partial) | $ 2,724.35 |
| 1975 | 17,330.21 |
| 1976 | 20,359.91 |
| 1977 | 22,140.65 |
| 1978 | 23,712.81 |
| 1979 (partial) | 17,973.08 |

### Frank

| Year | Total Compensation |
| --- | --- |
| 1975 (partial) | $ 4,472.24 |
| 1976 | 19,951.88 |
| 1977 | 21,134.51 |
| 1978 | 23,176.88 |
| 1979 (partial) | 19,740.79 |

### Michaelis

| Year | Total Compensation |
| --- | --- |
| 1970 | $10,983.05 |
| 1971 | 10,950.00 |
| 1972 | 11,899.60 |
| 1973 | 12,891.36 |
| 1974 | 13,333.17 |
| 1975 | 13,437.06 |
| 1976 | 13,952.38 |
| 1977 | 14,296.70 |
| 1978 | 14,991.07 |
| 1979 (partial) | 2,942.96 |

## B.

### Memorandum of Law

This court has jurisdiction over this action pursuant to 28 U.S.C. § 1343(3) and § 1343(4), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5[f][3]. In order for plaintiff to prove that she is entitled to relief for constructive discharge under Title VII of the Civil Rights Act of 1964, she must establish that:

a) she was performing her job in the furniture merchandising department on February 27, 1979 at a level that met Polk Brothers' legitimate expectations at the time her job was eliminated;

b) there were comparable or similar positions available at Polk which she was competent and qualified to hold that would have been offered to her but for the fact that she was female;

c) the position offered to Michaelis at the Polk Brothers Belmont store was so intolerable or unpleasant that reasonable people would agree that Michaelis had no alternative but to resign; and

d) Polk Brothers imposed those conditions upon Michaelis for the purpose of forcing her to resign because of her sex.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277 (7th Cir. 1977). The court concludes that plaintiff established at trial that she was performing properly her job in a man-

ner which met Polk Brothers' legitimate expectations when her position was eliminated. However, Michaelis failed to establish by a preponderance of the evidence the remaining three elements necessary to support her claim of sex discrimination.

Although Michaelis testified that Norton Ascher once refused to promote her by stating that only a man could fill the position of reorder buyer, Ascher denied ever making such a statement. Having had the benefit of witnessing the demeanor and credibility of both Ascher and Michaelis, the court finds that Norton Ascher never made that statement. Thus, the only evidence offered at trial to support plaintiff's claim of sex discrimination was that the positions of reorder buyer were, at all material times, filled by men. That, standing alone, is not enough as a matter of law to support plaintiff's claim of constructive discharge.

Furthermore, no evidence was set forth which would establish that the Belmont Avenue sales position offered to Michaelis was distasteful, unpleasant or difficult. Indeed, others holding that position made more money than plaintiff, and the store was much closer to plaintiff's home. Finally, there was no evidence that at the time plaintiff's position was eliminated, that other similar positions existed. No evidence was submitted which would establish that other department managers were in need of assistants, and no reorder buyer positions were vacant in the furniture merchandise department on February 27, 1979.

■ Plaintiff argues that this court should apply, instead of the prima facie case set forth above, the standards announced by the Fifth Circuit in *Downey v. Southern Natural Gas Co.*, 649 F.2d 302 (5th Cir. 1981), and *Bourque v. Powell Electric Mfg. Co.*, 617 F.2d 61 (5th Cir. 1980). According to plaintiff, she would then have to prove, instead of subsection (b) above, that:

> she was not offered the job of re-order buyer, although qualified to hold said position, on account of her sex, and that her sex was the determinative factor in her being refused the position of re-order buyer.

Even assuming that *Downey* and *Bourque* establish the element proposed above as part of the prima facie case for constructive discharge, and that *Downey* and *Bourque* as interpreted by plaintiff should be the law in this circuit, plaintiff still is not entitled to relief. First, this court heard no evidence which would establish that plaintiff was qualified to hold the position of reorder buyer. Indeed, although not referred to in this court's Findings of Fact, there was evidence which would support the conclusion that plaintiff did not possess the requisite mathematical ability, product knowledge, communications skills or personality necessary to function effectively as a reorder buyer. Moreover, reorder buyers were required to drive to the locations of the various retail stores in the Chicago metropolitan area, and the evidence established that plaintiff did not drive an automobile.

Second, there was no evidence that plaintiff's sex was the determinative factor in Polk Brothers' refusal to promote her to the position of reorder buyer. Instead, ample evidence was established to support the conclusion that plaintiff was unwilling or unable to adapt to new procedures. Significantly, she declined to rely upon computer printouts designed to streamline office procedure and improve efficiency, and she refused to use a form thought by a reorder buyer to improve the efficiency with which he performed his own tasks.

For these reasons, the court concludes that Polk Brothers, Inc. is entitled to judgment in its favor as to Count One of plaintiff's amended complaint, which claimed that plaintiff was the subject of sex discrimination prohibited by Title VII of the Civil Rights Act of 1964, and hereby orders that judgment be so entered. In addition, the court denies Polk Brothers' motion for judgment n. o. v. as to plaintiff's age discrimination claim contained in Count Two, declines to enter judgment on the verdict in favor of plaintiff as to that claim, and orders that a new trial be held as to that claim alone.